POLK, Appellant,

v.

POLK, Appellee.

[Cite as *Polk v. Polk*, 188 Ohio App.3d 809, 2010-Ohio-3355.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23584.

Decided July 16, 2010.

810

Stephen E. Klein, for appellant.

Bieser, Greer & Landis, L.L.P., Charles F. Shane, and Jennifer L. Brogan, for appellee.

GENE DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Dean Polk, appeals from a Montgomery County Common Pleas Court Domestic Relations decision finding him to be in contempt of court for failing to pay the property division pursuant to the divorce decree between him and defendant-appellee, Mary Beth Polk (n.k.a. Mary Beth McIntosh), and also finding him to have committed fraudulent concealment and/or fraudulent misrepresentation.

{¶ 2} The parties executed a final judgment and decree of divorce on September 12, 2003.

{¶ 3} Appellant owned a company called Buckeye Express Services, Inc. ("Buckeye"). At the time of the divorce, Buckeye was involved in litigation with Airborne Express, Inc. in federal court.

{¶ 4} Relevant to this case, the divorce decree contained the following provision:

{¶ 5} "At the present time the Plaintiff's corporation Buckeye Express Services, Inc. has pending litigation against Airborne Express, Inc. * * *. The parties have agreed that the Defendant shall receive from any settlement, judgment or other compromise of claims arising out of the business dealings between Buckeye and Airborne Express of any nature whatsoever, including, but not limited to this lawsuit, any successor lawsuit or action, the first Forty Thousand Dollars ($40,000.00) of the proceeds/recovery after expenses of suit including legal fees, accounting fees, expert fees, consultant fees and court costs

have been paid and then thirty percent (30%) of any amount recovered after the expenses of suit and the first Forty Thousand Dollars ($40,000.00) have been paid to the Defendant.

{¶ 6} "It is the intent of the parties that the Plaintiff will take no action which would hinder or impede the Defendant's ability to receive monies as ordered herein. * * * Still further, this Court shall retain jurisdiction over this matter to enforce the provision as may be necessary."

{¶ 7} Appellee filed a motion to show cause on October 29, 2007, alleging contempt, breach of contract, unjust enrichment, conversion, and fraudulent misrepresentation. Appellee claimed that she had asked appellant on numerous occasions about the status of the Buckeye/Airborne Express litigation, and he told her repeatedly that the case had been dismissed and he was no longer pursuing it. However, appellee learned that appellant had reached a settlement with Airborne Express in the amount of $375,000, which he did not disclose to her.

{¶ 8} A magistrate held a hearing on her motion and took evidence from both parties. In his defense, appellant relied on a confidentiality agreement that he signed with Airborne Express, which provided:

{¶ 9} "If requested by any person to comment on the Suit or its settlement, the Parties and their counsel will say nothing other than that 'The Suit was resolved to the mutual satisfaction of the parties.' However, the terms of the Agreement may be disclosed without consent: a) to the extent required by applicable law or regulation; or b) on an as needed basis to the Parties' accountants or lawyers, provided that the party so disclosing pursuant to subsection 'b' herein shall require that any such person to whom such disclosure is made shall keep the information confidential and place such person under a written obligation of confidentiality."

{¶ 10} Thus, appellant argued that he could not disclose the settlement to appellee without resulting in a breach of the confidentiality agreement.

{¶ 11} The magistrate subsequently issued a decision finding appellant to be in contempt for failure to comply with the terms of the divorce decree and also found that appellant committed fraudulent concealment/misrepresentation. Appellant filed objections to the magistrate's decision.

{¶ 12} On April 23, 2009, the trial court overruled appellant's objections and made the following orders. It found appellant to be in contempt for failure to pay the property division pursuant to the divorce decree. Consequently, the court sentenced appellant to 30 days in jail and gave him the opportunity to purge the jail sentence by paying appellee her share of the settlement proceeds within 30 days. The court dismissed appellee's claim for breach of contract. The

court found that appellant committed fraudulent concealment and/or fraudulent misrepresentation. It awarded appellee $140,500 as her share of the settlement. The court further found that appellant failed to demonstrate any legitimate expenses to be offset against the settlement award.

{¶ 13} In a subsequent agreed entry, the parties stipulated that appellee's attorney fees of $40,000 were reasonable and necessary and stipulated to such a finding by the court.

{¶ 14} Appellant filed his notice of appeal on August 13, 2009.

{¶ 15} Appellant raises two assignments of error. However, each assignment of error contains numerous subparts, mirroring his objections to the magistrate's decision, each attacking a particular finding of fact or conclusion of law and requiring its own analysis. Thus, we will address each one in turn, resulting in 15 subassignments of error.

{¶ 16} Appellant's first seven subassignments of error each assert that one of the magistrate's/trial court's factual findings was not supported by the evidence. Thus, the same standard of review applies to each of them. An appellate court must give substantial deference to the trial court's findings of fact and will not reverse those findings if they are supported by competent, credible evidence. *Baker v. Chrysler*, 179 Ohio App.3d 351, 2008-Ohio-6032, 901 N.E.2d 875, at ¶ 46.

{¶ 17} Appellant's first subassignment of error states:

{¶ 18} "The trial court erred in A) failing to make a finding of fact that Polk never actually received $375,000 in cash available for distribution pursuant to the divorce decree."

{¶ 19} The trial court found that the undisputed settlement amount was $375,000. It stated that the critical issue was the amount of the settlement and not the amount that appellant alleges that he received.

{¶ 20} Appellant contends that of the $375,000 paid by Airborne Express to Buckeye, he actually received only $288,050.79 because his attorney retained the remaining $86,949.21 as partial payment for his legal fees. Appellant claims that he was never in possession of the entire $375,000 and asserts that appellee even acknowledged this.

{¶ 21} The undisputed evidence was that the total settlement amount was $375,000. Both parties testified that this amount was accurate. Thus, this was the proper starting point, pursuant to the divorce decree, from which to compute appellee's share of the settlement. Appellant's assertion that attorney fees should have been deducted from this amount is addressed in his next subassignment of error.

{¶ 22} Accordingly, appellant's first subassignment of error is without merit.

{¶ 23} Appellant's second subassignment of error states:

{¶ 24} "The trial court erred in B) making a finding that Polk incurred no 'expenses of suit' as a result of his litigation against Airborne Express."

{¶ 25} The trial court found that appellant improperly included as "expenses of suit" business losses he incurred during the litigation and expenses he incurred acting as a consultant. And the court found that appellant failed to present credible documentation to support his claim for attorney fees.

{¶ 26} Appellant notes that per the decree's language, he was permitted to deduct "expenses of suit" from the settlement total. He argues that it was unreasonable and contrary to the evidence for the court to conclude that he incurred no expenses during his litigation. Appellant asserts that he provided documentation of $130,000 spent on legal fees and $112,000 in other "expenses of suit," which included business expenses incurred to develop evidence against Airborne Express.

{¶ 27} In support of his claim for attorney fees, appellant submitted his fee agreement with his attorney, in which he agreed to pay the attorney $135 per hour plus a contingency fee of 22.5 percent. He also submitted a total-fee statement from his attorney, providing a breakdown of the fees and a total owed of $127,021.57. Appellant testified that he fully paid his attorney this amount. He testified that he made some payments to his attorney before the settlement and that the remainder was taken from the settlement money. Additionally, appellee presented evidence of a wire transfer to appellant's attorney of $299,084 and a transfer from appellant's attorney to appellant for $229,951.79. Appellant stated that these numbers reflected attorney fees that he paid. Appellee also questioned appellant about a check from his attorney's Interest on Lawyers' Trust Accounts account for $58,125. Appellant stated that this was the second distribution from the settlement money. He testified that the total distribution was $75,000, but his attorney kept the rest ($16,875) for fees.

{¶ 28} Given the above testimony and exhibits, the trial court erred in finding that appellant did not present sufficient evidence to support his claimed attorney fees. It was unreasonable to conclude that appellant kept an entire $375,000 settlement and paid his attorney nothing. Through testimony and exhibits, appellant presented competent, credible evidence that he paid his attorney $127,021.57. And attorney fees were clearly listed as "expenses of suit" in the divorce decree. Thus, the trial court should have deducted this amount from the $375,000 settlement amount before determining appellee's share of the settlement. The result is a settlement amount of $247,978.43 ($375,000 minus $127,021.57). From this amount, appellee is entitled to $102,393.53 ($247,978.43

minus $40,000 equals $207,978.43, times 30 percent equals $62,393.53, plus $40,000 equals $102,393.53).

{¶ 29} Additionally, appellant claims that Buckeye incurred business expenses as a result of the litigation, which he claims were "expenses of suit" per the divorce decree. The decree sets out specific examples of "expenses of suit." The examples are legal fees, accounting fees, expert fees, consultant fees, and court costs. It does not seem that business expenses are the type of expenses contemplated by "expenses of suit." Had the parties intended business expenses to be included as "expenses of suit," they could have added such an example to the list. Instead, they chose to include only legal-type expenses.

{¶ 30} Accordingly, appellant's second subassignment of error has merit as it relates to his attorney fees, but it does not have merit as it relates to his business expenses.

{¶ 31} Appellant's third subassignment of error states:

{¶ 32} "The trial court erred in C) failing to make determine [sic] as a finding of fact that Polk's payment of McIntosh's share of settlement proceeds would have disclosed to McIntosh the amount of the settlement received from the Airborne Express litigation."

{¶ 33} Appellant asserts here that the magistrate should have made a finding that if he made a payment to appellee of a portion of the settlement agreement pursuant to the decree, he would have been in breach of the confidentiality agreement because appellee would have then been able to determine the exact amount of the confidential settlement. He claims that the omission of such a finding of fact was in error.

{¶ 34} The issues in this case surrounded whether appellant purposely failed to comply with the divorce decree and whether he fraudulently misrepresented the state of the Buckeye/Airborne Express litigation to appellee. Whether appellant may or may not have breached the confidentiality agreement was not at issue here.

{¶ 35} Accordingly, appellant's third subassignment of error is without merit.

{¶ 36} Appellant's fourth subassignment of error states:

{¶ 37} "The trial court erred in D) making a finding of fact that Polk made a representation to McIntosh and (because there was a duty to disclose) concealed a fact, material to McIntosh's claim, which was made falsely, not only with knowledge of its falsity but also with intent to mislead McIntosh into relying on it."

{¶ 38} The trial court found that appellant reached a settlement with Airborne Express and intentionally did not inform appellee of this fact. It

further found that although appellee frequently inquired of appellant regarding the status of the litigation, he informed her that the case had been dismissed and he was no longer pursuing it.

{¶ 39} Appellant argues that the trial court did not have evidence before it to conclude that after signing the settlement agreement with Airborne Express on August 11, 2004, appellee requested settlement information from him and he intentionally misled her. Appellant argues that appellee cannot point to any evidence of when the alleged misrepresentations took place. He claims that this was crucial to a claim of fraudulent concealment/misrepresentation because from May 15, 2003, until August 24, 2004, the litigation at the trial level was over, he had lost on summary judgment, and the only litigation was his pending appeal of summary judgment. So he claims that his statements to appellee that the litigation was over were the truth if they occurred during this time.

{¶ 40} Appellant further argues that as for the fraud-by-concealment claim, he could not disclose to appellee the settlement because of his duty not to comment on the litigation or settlement as per the confidentiality agreement.

{¶ 41} Appellant places a great deal of weight on his argument that if he made the statements to appellant that the case was over during the time between May 2003, when summary judgment was granted to Airborne Express, and August 2004, when the settlement was reached, then they were not fraudulent. However, his argument is misplaced.

{¶ 42} First, although appellee did not give specific dates of the allegedly fraudulent statements, the evidence was that they were made after the divorce was final in September 2003. Appellee testified that *after* the divorce, she repeatedly asked appellant about the case against Airborne Express, and he always responded by stating that he dropped the case or he could not afford the attorney fees. Appellee testified that she asked appellant five or six times and always got the same response. So clearly appellant did not make the statements between May and September 2003.

{¶ 43} Second, appellant represents that he appealed from the adverse summary-judgment ruling. Presuming that he filed an appeal within 30 days of the federal trial court's May 2003 summary-judgment award, he would have filed his appeal by no later than the end of June 2003. Thus, at all relevant times, the litigation was not over. Appellant had a direct appeal pending. And with the appeal pending, there also existed the potential for settlement negotiations. Thus, when appellant told appellee that the litigation was over, this was a misrepresentation even if the statements were made between September 2003 and August 2004.

{¶ 44} Third, if appellant made the statements after he entered into the settlement agreement in August 2004, he clearly misled appellee. Regardless of whether he signed a confidentiality agreement or not, appellant had a duty to disclose the settlement to appellee per the divorce decree.

{¶ 45} Finally, appellant admitted that he never disclosed the settlement to appellee and that when he entered into the settlement he had no intention of ever telling appellee that a settlement had been reached. And appellant knew that a portion of the Buckeye settlement was to go to appellee per the divorce decree. Yet he chose to negotiate a confidentiality agreement with Airborne Express with terms that seemed to preclude him from disclosing the settlement to her.

{¶ 46} Accordingly, appellant's fourth subassignment of error is without merit.

{¶ 47} Appellant's fifth subassignment of error states:

{¶ 48} "The trial court erred in E) making a finding of fact that McIntosh justifiably relied upon such representation or concealment."

{¶ 49} Appellant argues that due to the contentious relationship between him and appellee, appellee could not justifiably rely on anything he told her. He further asserts that because appellee did not believe him to be an honest person, she could not rely on anything that he told her regarding the litigation.

{¶ 50} The magistrate concluded that based on appellee's testimony, she justifiably relied on appellant's misrepresentations to her. Appellee testified that she had no reason to think appellant was lying when he told her that he had dropped the litigation. Although appellee also testified that she did not believe appellant to be an honest person when it came to personal matters, she stated that she believed him when it came to business matters. The magistrate's conclusion on this issue is reasonable in light of appellee's testimony.

{¶ 51} Accordingly, appellant's fifth subassignment of error is without merit.

{¶ 52} Appellant's sixth subassignment of error states:

{¶ 53} "The trial court erred in F) making a finding of fact that any injury to McIntosh was proximately caused by said reliance."

{¶ 54} Here appellant argues that even if he made a fraudulent statement to appellee, it did not proximately cause her to lose $140,500. He notes that any such fraudulent statement did not deprive appellee of funds already in her possession.

{¶ 55} The magistrate found that appellee suffered an injury as a result of her reliance upon appellant's concealment because appellant, by his own testimony, stated that he could have paid appellee anywhere from $100,000 to $150,000 prior

to November of 2006. But now appellant claims that he has no assets from which to pay appellee.

{¶ 56} As the magistrate points out, had appellant disclosed the settlement to appellee when it occurred, it seems he could have easily afforded to pay appellee her portion of the proceeds. Instead, he concealed the settlement from appellee. By the time appellee discovered the settlement and proceeded through the courts, appellant had filed for bankruptcy. Thus, the magistrate's finding was supported by the evidence.

{¶ 57} Accordingly, appellant's sixth subassignment of error is without merit.

{¶ 58} Appellant's seventh subassignment of error states:

{¶ 59} "The trial court erred in G) making a finding of fact that Polk was able to pay McIntosh $140,500 by October 16, 2008."

{¶ 60} The trial court found that per appellant's own testimony, he had the money to pay appellee as early as November 2006. Because appellant intentionally failed to comply with the divorce decree, the court found that the purge provision requiring appellant to pay appellee a lump sum payment by October 16, 2008, was reasonable.

{¶ 61} Appellant states that he filed for Chapter 13 bankruptcy protection in December 2007 and that his debt to appellee is included in his Chapter 13 plan. He further states that he is paying $1,921 per month as was approved by the bankruptcy court, and his remaining money is consumed by the bankruptcy plan. Thus, he argues that he cannot pay $140,500 to appellee at this time. Accordingly, appellant asserts that it was unreasonable for the court to assume that he could pay the entire sum at this time.

{¶ 62} It is undisputed that appellant is currently under a bankruptcy plan. It is also undisputed, however, that appellant had the funds to pay appellee at the time he entered into the settlement agreement and as recently as November 2006. Thus, it was reasonable for the court to order appellant's payment to appellee at this time given his deceitful conduct and the fact that he did have the funds to pay appellee but chose not to do so.

{¶ 63} Accordingly, appellant's seventh subassignment of error is without merit.

{¶ 64} Of appellant's seven subassignments of error that make up assignment of error one, only his second subassignment of error has partial merit. Therefore, appellant's first assignment of error has merit only so far as it relates to his attorney fees, as discussed previously. In all other respects, appellant's first assignment of error is without merit.

{¶ 65} Appellant's second assignment of error provides that numerous conclusions of law were in error.

{¶ 66} Appellant's eighth subassignment of error states:

{¶ 67} "The trial court erred in concluding as a matter of law that A) McIntosh submitted clear and convincing proof of each element of fraud and/or fraudulent concealment."

{¶ 68} Appellant argues that appellee did not prove the elements of fraud. He does not make any specific allegations here as to which element(s) appellee failed to meet.

{¶ 69} "The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709.

{¶ 70} Appellee presented competent, credible evidence satisfying each element of fraud. The evidence reflects the following.

{¶ 71} First, appellant told appellee on five or six occasions, after the divorce decree was entered, that he had dropped the Buckeye litigation and it was over.

{¶ 72} Second, these statements were material to appellee's entitlement to settlement proceeds under the terms of the divorce decree. Appellant's statements to appellee clearly related to appellee's share of the Buckeye litigation. She specifically asked him about the status of the litigation so that she could learn whether she would be receiving her share.

{¶ 73} Third, appellant knew the statements were false at the time because, at the least, he was proceeding with an appeal on the summary-judgment ruling. Furthermore, appellant testified that he knew appellee was entitled to a portion of the settlement proceeds, yet he never disclosed the settlement to her.

{¶ 74} Fourth, appellant's actions indicate that he intended appellee to rely on his statements. Despite his clear knowledge of the divorce decree's terms, appellant purposely kept the settlement a secret from appellee. Thus, he must have intended that appellee believe his misrepresentations regarding the status of the Buckeye litigation.

{¶ 75} Fifth, appellee did rely on appellant's statements to her. Appellee testified that she believed appellant when he told her that he was not pursuing the litigation. Furthermore, she stated that she looked the lawsuit up on the

court's website and it said that the lawsuit had been dismissed, so she had no reason to mistrust appellant's information.

{¶ 76} Sixth and finally, appellee suffered financially by having to pursue her claim in court and possibly losing her chance to recover her entitled amount from the Buckeye settlement. Appellant testified that he had the money to pay appellee any time prior to November 2006. But he then testified that he has no funds from which to pay appellant now because he filed for bankruptcy.

{¶ 77} Because appellee presented competent, credible evidence as to each element of fraud, appellant's eighth subassignment of error is without merit.

{¶ 78} Appellant's ninth subassignment of error states:

{¶ 79} "The trial court erred in concluding as a matter of law that B) McIntosh's submission to a confidentiality agreement was neither a reasonable nor necessary precondition for disclosure of the settlement terms of the Airborne Express litigation."

{¶ 80} Appellant again contends here that he could not disclose the settlement to appellee due to the confidentiality agreement.

{¶ 81} But once again, the confidentiality agreement was not at issue in this case. Appellant's obligations under the divorce decree preceded the confidentiality agreement. Before entering into the confidentiality agreement, appellant could have negotiated with Airborne Express to include appellee in the agreement. Instead, he chose to proceed without informing Airborne Express of appellee's entitlement to a portion of the settlement proceeds.

{¶ 82} Thus, appellant's ninth subassignment of error is without merit.

{¶ 83} Appellant's tenth subassignment of error states:

{¶ 84} "The trial court erred in concluding as a matter of law that C) Polk is guilty of contempt for failing to pay McIntosh an unliquidated sum of money."

{¶ 85} Appellant contends that he relied on his attorney's advice in not informing appellee of the settlement and, therefore, the court should not have found him in contempt.

{¶ 86} In reviewing a finding of contempt, an appellate court must determine whether the trial court abused its discretion. *Wadian v. Wadian*, 5th Dist. No. 2007 CA 00125, 2008-Ohio-5009, 2008 WL 4394730, at ¶ 12. An abuse of discretion is more than an error of law or judgment; it connotes that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 87} "It is no defense to a finding of civil contempt that a party acted in good faith or upon the advice of counsel." *State ex rel. Adkins v. Sobb* (1988),

39 Ohio St.3d 34, 36, 528 N.E.2d 1247. Consequently, appellant's "defense" must fail.

{¶ 88} Accordingly, appellant's tenth subassignment of error is without merit.

{¶ 89} Appellant's 11th and 12th subassignments of error are very similar. They state:

{¶ 90} "The trial court erred in concluding as a matter of law that D) Polk is guilty of contempt for failing to pay McIntosh $140,500."

{¶ 91} "The trial court erred in concluding as a matter of law that E) Polk is guilty of contempt for failing to pay McIntosh $140,500 by October 16, 2008, when he is unable to pay it."

{¶ 92} Appellant asserts that he fully disclosed appellee's claim to the bankruptcy court and it has been incorporated into his bankruptcy plan. He argues that his inability to comply with the divorce decree outside of the bankruptcy plan establishes that the court erred in finding him in contempt. Appellant claims that his bankruptcy plan will remain in effect until 2013. He asserts that not until that time will he have any ability or legal right to pay the amount due to appellee.

{¶ 93} Appellant could have easily avoided this predicament had he complied with the terms of the divorce decree. When he chose to disregard the divorce decree, which was a judgment of the court, he subjected himself to liability for contempt. A contempt finding can include an order to pay according to the court order that was violated in order to purge the contempt.

{¶ 94} Accordingly, appellant's 11th and 12th subassignments of error are without merit.

{¶ 95} Appellant's 13th subassignment of error states:

{¶ 96} "The trial court erred in concluding as a matter of law that F) Polk is guilty of contempt for failing to pay McIntosh $140,500 when principles of equity are disregarded."

{¶ 97} Appellant asserts that appellee unreasonably waited two years before seeking relief on her claim. He claims that this operated to his prejudice because he may have had the funds to pay her two years earlier.

{¶ 98} Appellant seems to argue that because appellee, through her lawyers, had public access to the federal court's docket, she had constructive notice of the course of the Buckeye/Airborne Express litigation. Therefore, appellant claims, appellee should have filed her claim sooner.

{¶ 99} Appellant attempts here to shift the blame to appellee for his bad actions. Instead of acknowledging that it was his duty under the divorce decree

to inform appellee of the settlement and pay her share accordingly, he implies that it was appellee's duty to conduct an investigation into the course of the litigation and bring a claim against him in a timely manner. Such an argument flies in the face of the spirit of the divorce decree.

{¶ 100} Accordingly, appellant's 13th subassignment of error is without merit.

{¶ 101} Appellant's 14th subassignment of error states:

{¶ 102} "The trial court erred in concluding as a matter of law that D) Polk should be incarcerated for thirty days."

{¶ 103} Appellant contends that the trial court could not both sentence him to jail and order him to pay appellee a lump-sum judgment.

{¶ 104} In a civil contempt case, the purpose of the punishment is to coerce the contemnor to obey a judicial order for the benefit of a third party. *Nichol v. Nichol* (May 8, 2000), 7th Dist. No. 97–CA–143, 2000 WL 652537, citing *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 711, 681 N.E.2d 1383. Further, the " 'contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered.' " *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 139, 15 OBR 285, 472 N.E.2d 1085, quoting *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 18 O.O.3d 446, 416 N.E.2d 610. Civil-contempt sanctions, such as a jail sentence, are merely conditional. Therefore, the trial court is obligated to provide the contemnor with a means to purge his contempt. *Nichol*, citing *State v. Kilbane* (1980), 61 Ohio St.2d 201, 206–207, 15 O.O.3d 221, 400 N.E.2d 386.

{¶ 105} R.C. 2705.05(A)(1) provides that for a first-time contempt, the court may sentence the contemnor to up to 30 days in jail. The trial court gave appellant the chance to purge his contempt and avoid his sentence by paying appellee the ordered amount.

{¶ 106} Contrary to appellant's argument, the trial court did not err in sentencing him to 30 days in jail and ordering him to pay appellee her share of the settlement proceeds. The court was obligated to provide appellant with a means to purge the contempt.

{¶ 107} Accordingly, appellant's 14th subassignment of error is without merit.

{¶ 108} Appellant's 15th subassignment of error states:

{¶ 109} "The trial court erred in concluding as a matter of law that H) Polk could pay McIntosh's attorney fees of $40,000."

{¶ 110} Appellant asserts that the magistrate had no evidence on which to conclude that he had the means available to pay $40,000 of appellee's attorney fees.

{¶ 111} An award of attorney fees in a postdivorce-decree motion is a matter within the trial court's discretion. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 481 N.E.2d 609.

{¶ 112} Since the award of attorney fees is a matter within the court's discretion and given appellant's conduct in this case in trying to conceal the settlement from appellee and prevent her from obtaining her share, it is not unreasonable that that court made an award of fees in this case.

{¶ 113} Accordingly, appellant's 15th subassignment of error is without merit.

{¶ 114} Because appellant's eighth through 15th subassignments of error are without merit, his second assignment of error is without merit.

{¶ 115} For the reasons stated above, the trial court's decision is hereby reversed as to the amount of appellee's portion of the settlement proceeds. This matter is remanded to the trial court to adjust appellee's award pursuant to this opinion. In all other respects, the trial court's judgment is hereby affirmed.

Judgment accordingly.

FAIN and FROELICH, JJ., concur.

GENE DONOFRIO, J., of the Seventh Appellate District, sitting by assignment.