[Cite as *Himes v. Himes*, 2021-Ohio-1111.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

TROY HIMES                              :
                                        :
    Plaintiff-Appellant             :       Appellate Case No. 2020-CA-39
                                        :
v.                                      :       Trial Court Case No. 2015-DR-60
                                        :
LEANA HIMES                             :       (Appeal from Common Pleas
                                        :       Court – Domestic Relations Division)
    Defendant-Appellee              :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of April, 2021.

. . . . . . . . . . .

THOMAS EAGLE, Atty. Reg. No. 0034492, 3400 North State Route 741, Lebanon, Ohio 45036
    Attorney for Plaintiff-Appellant

APRIL MOORE, Atty. Reg. No. 0084711, 1354 North Monroe Drive, Suite B, Xenia, Ohio 45385
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Troy Himes appeals from the trial court's judgment finding him in contempt of court for his failure to refinance or sell the parties' marital residence within 120 days of the parties' final decree of divorce. The trial court's judgment finding Troy in contempt required him to pay $25,000 to his former wife, Leana Himes, to purge his contempt. Because we find that this order operated to modify the original property division in the final decree of divorce, in violation of R.C. 3105.171(I), the judgment is reversed as to this payment. The judgment is affirmed insofar as it ordered Troy to pay court costs and attorney fees.

{¶ 2} The parties divorced in 2018. With respect to the marital residence, the parties' decree of divorce provided:

9. <u>Marital Residence</u> – The marital residence is **AWARDED** to Plaintiff [Troy]. Plaintiff purchased the property on June 23, 2005 for $192,000. The parties were married on October 16, 2005. The entire purchase was financed and the mortgage was reduced using marital funds. There was no down payment made from Plaintiff's separate funds. * * *

* * * The Court finds the entire mortgage has been paid for with marital monies and the residence is subject to equal equity division. The mortgage balance as of June 6, 2016 is $156,040.49. The property was refinanced on April 15, 2010. The principal amount of the loan was $187,773. An additional $1,874.48 was paid out to the Plaintiff and the balance went to the new loan. Even though the Defendant's name is not on the mortgage or the deed, that fact alone is not dispositive of her marital interest in the home. Plaintiff did not present evidence to show his

separate interest in the property or the mortgage was reduced before the parties were married. The mortgage was reduced during the marriage and was paid for with marital funds earned by the in kind labor of **both** parties.

Plaintiff had the property appraised on September 20, 2016 by Grabeman Appraisal. The property was valued at $153,000. The appraiser used the Cost Approach to arrive at the property value. Mr. Grabeman testified he used one comparable home from the same neighborhood and two other houses were from a different location than the marital residence.

Defendant also had the property appraised. Robert L. Norman from Liming and Associates testified the property is worth $207,000 using the Market Value approach. All comparables used by Mr. Norman are located within the same neighborhood the marital residence is located. The Market Value Approach has been recognized by the Second District Court of Appeals *to be the most realistic* approach to determine a current value. The mortgage is deducted from the home's value and the equity is the difference between the value of the home and the mortgage balance. The Court finds the current value of the home to be $207,000.00. The Plaintiff is **ORDERED** [to] **refinance or sell** the property within **120** days of this Entry's time-stamped date. Both parties testified the Plaintiff's intent is to sell the marital residence. The most current mortgage balance is $156,863.82. After the cost of sale and the current mortgage is paid off, Plaintiff is **ORDERED** to pay off all marital debts listed in Section 12 at the

**CLOSING**.   The **only** debts to be paid out of the refinance or sale of the real estate are the debts listed * * * in Section 12 below.

Any remaining equity will be divided equally between the parties.   If there is not enough marital equity to pay off the debts listed in Section 12, the remainder of the debt will be paid pursuant to line 16 of the attached and incorporated child support worksheet.[1]

Defendant is **ORDERED** to co-operate in every way with the Plaintiff by signing off on any and all paperwork needed to effectuate the sale of real estate in a timely manner.

| Mortgage Balance as of June 16, 2016 | Possible Equity |
|---|---|
| $156,863.82 | $50,136.18 |

(Original footnotes omitted; footnote added; emphasis sic.)

{¶ 3} On August 23, 2019, Leana filed a motion to show cause, seeking a finding that Troy was in contempt for failing to comply with the court's order to refinance or sell the marital residence and asserting that he had vacated the property and moved to Pennsylvania.[2]

{¶ 4} At the July 1, 2020 hearing on Leana's motion, Troy testified on cross-examination that he moved to Pennsylvania in September 2018.   When asked about the court's order regarding the marital home, Troy testified that he had not been able to

---

[1] Line 16 of the child support worksheet provided that Troy's income was 61.72% of the parties' total income, and Leana's was $38.28%.   Section 12 of the final decree, regarding the allocation of marital debt, provided that Troy "will pay 62% of any remaining marital debt and [Leana] will pay 38% of any remaining marital debt."

[2] Leana's motion also addressed to her parenting time, but that is not at issue in this appeal.

refinance it. His recollection was that he was to pay Leana "$25,000 as her half of the equity in the home, or to sell it and split any equity over $150,000." Troy stated that he did not remember when he listed the house for sale, but that it was before 2020, and it sold in February or March 2020. Troy testified that the home sold for "about $150,000," which was the best offer he got "hands down," that the mortgage balance had been about $145,000, and that there was about a $5,000 difference, "but [he] still had other expenses." Troy testified that the home was vacant from September 2018 until it sold. When asked if he maintained the home, Troy stated that he returned on occasion from Pennsylvania, kept the lawn maintained, and had neighbors "watching out" for him. The following exchange occurred:

Q.[LEANA'S ATTORNEY]: * * * [I]it appears that there was possibly $50,000 in equity at the time of the divorce, does that sound correct?

A. They were different appraisals.

Q. Okay.

A. But the one that - - yes.

Q. Okay. And the only amount you got in proceeds was $2,553.75?

A. If that's what the numbers show.

Q. Okay.

A. I'm afraid I don't see them.

Q. Do you believe Leana should be entitled to at least half of that?

A. No.

Q. Why?

A.  Because according to [the] divorce decree, I - - anything over 150 or 153, which was owed at the time, was to be dispersed.

{¶ 5} Leana also testified at the hearing.   She testified that she had an accident on May 19, 2018, and that paralyzed her.   She also stated that Troy did not comply with the court order regarding the home, which was sold in March 2020.   The following exchange occurred during direct examination of Leana:

Q.[LEANNA'S ATTORNEY]:   And due to the order not being complied with or meaning being refinanced or listed to sell, would you request then as it being equitable to you to have one half of the proceeds to the sale?

[COUNSEL FOR TROY]:   Object to that, your Honor.   You've got no jurisdiction whatsoever to modify property - -

[THE COURT]:   No - -

[COUNSEL FOR TROY]:   - - division.

[THE COURT]: - - it's in the decree.   I'm - - we're all stuck with that.

[COUNSEL FOR TROY]:   That's correct.

[COUNSEL FOR LEANA]:   Nothing further, your Honor.

[THE COURT]:   Did you have to pay anything?

[LEANA]:   No, I didn't.

[THE COURT]:   So the only expense that you incurred then was filing the Motion for Contempt for him not selling and not listing it properly?

[LEANA]:   Yes.

* * *

[THE COURT]:   And he's admitted he didn't sell it.   He didn't list it.

**{¶ 6}** Troy identified as Exhibit 3 a listing contract for the marital home, and Exhibit 5 as a settlement statement.   Troy stated that he had difficulty finding someone willing to list the home because of its condition, and the potential buyers who did show an interest "were looking to flip houses and get it fixed up."   Troy stated that he had not had the time or the money to fix up the house.   According to Troy, the house was appraised at $120,000, far less than he owed, so he "couldn't go that route."

**{¶ 7}** Troy stated that his realtor "work[ed[] with houses in disrepair" and that the home was in the same condition at the sale as when the divorce was granted.   He stated that he did not turn down any offers higher than the one he accepted.   Troy testified that the home had been costing him "a fortune every month" and that he had no reason to delay the sale.   Troy stated that refinancing had not been an option because his "credit was ruined."   When asked by the court if he applied to refinance the home, Troy responded that he "did a soft credit check" via telephone and was denied.

**{¶ 8}** At the conclusion of the hearing, the court found:

On the real estate issue, you're in contempt there.   You didn't * * * do what you were supposed to do for over a year.

One, you didn't refinance.   The option was if you don't refinance, you put it up for sale.   Actually, I think this document said it was to be sold, but, again, I would interpret, again, my own writing to mean you had to at least put it up for sale.   You didn't do it.   * * *

* * *

The sale of the property has now taken place.   I didn't receive any

evidence of any sort of financial hardship or cause that was there.

I realize it would have been prohibited [sic] to try to find somebody to testify that you could have sold it for X dollars last year, and it sold for X minus this year. I don't know if that's available out there or not. Anyway, it wasn't presented, so you're in a technical contempt there.

{¶ 9} On September 15, 2020, the court ordered Troy to pay Leana $750 in attorney fees and $225 in court costs within 90 days of the hearing. Its written decision further stated:

[Troy] testified that, in the Decree, he was [o]rdered to pay [Leana] $25,000 if he refinanced the marital residence, or split any equity over $150,000 if [Troy] chose to sell the home. At the time the Decree was filed, the Court chose [Leana's] appraisal of the home over [Troy's], and found that that the home was valued at $207,000. * * * [Troy's] appraisal put the home's value at $153,000. * * * According to the Decree, the mortgage balance was $156,040.49 as of June 6, 2016. * * * [Troy] was [o]rdered to decide whether to refinance or sell the home within 120 days of the filing of the Decree. With the Decree being filed on February 26, 2018, the deadline for [Troy] to refinance or sell the home was June 26, 2018. Whichever option [Troy] chose, it was anticipated [Leana] would receive approximately $25,000 for her interest in the marital real estate.

[Troy] testified that he listed the home for sale sometime in 2019 and sold the home for $150,000 in February or March, 2020. [Troy] stated that, at the time of the sale, $145,000 was owed on the home. [Troy] testified

that he was not able to refinance the home. [Troy] did not provide a satisfactory reason for not listing the home for sale when he moved to Pennsylvania or for nearly a year thereafter. [Troy] testified that he would occasionally come back to check on the home and that he had neighbors looking out for the property. No one resided in the home after [Troy] moved to Pennsylvania in August, 2018. No documentary evidence regarding the sale of the marital residence was presented to the Court at the July 1, 2020, hearing.

When the court was considering the allegations against [Troy] and [Troy]'s testimony about same, the Court made the following observations: [Troy] sold the marital residence for a price within the $3,000 of *his* appraisal at the time of the divorce; [Troy] provided no documentary evidence about the sale of the marital residence or its value at the time of the sale; and [Troy]'s credibility has been diminished by his post-Decree conduct. The Court observed that [Troy], in essence, abandoned the marital residence rather than listing it for sale when he moved out of state. The Court observed that on [Troy]'s watch, the home's value decreased by $57,000 by [Troy]'s direct actions or his inaction. The Court further observed that [Troy]'s negative attitude toward [Leana] has emboldened him to believe his violations of Court Orders are justified.

Given [Troy]'s post-Decree conduct and an alleged extreme decrease in value of the marital residence over the two years between the filing of the Decree and [Troy]'s sale of same, the Court hereby finds [Troy]

in contempt for violating the Decree. [Troy] failed to refinance or sell the marital residence within 120 days of the filing of the Decree as Ordered. When evaluating appropriate sanctions, the Court considered [Troy]'s bad faith acts in determining the appropriate purge conditions. See the section titled *Show Cause Conclusion* below for details about purge conditions and sentencing.

{¶ 10} In the section about purging the contempt, the court ordered Troy to pay Leana $25,000 for her interest in the marital residence, in addition to paying her attorney fees and court costs, prior to the sentencing hearing, which was scheduled for December 21, 2020.

{¶ 11} Troy appeals from the trial court's judgment, raising one assignment of error:

THE TRIAL COURT ERRED IN DETERMINING PURGE CONDITIONS FOR CONTEMPT OF COURT.

{¶ 12} Troy asserts that a "domestic relations court lacks jurisdiction to modify the property division from a decree of divorce for payment for a sale of real estate as a condition to purge contempt of court that varies from the terms for payment for a sale of real estate in the divorce decree." He argues that the trial court violated his due process rights by sua sponte altering the terms of the divorce decree. According to Troy, the court erred by imposing a financial condition that was impossible for him to meet and that was not based on or was contrary to evidence of the current financial circumstances." Finally, Troy argues that the trial court abused its discretion in requiring, as a sanction for his contempt, that he pay "a random amount" to Leana based on "a prospective value of

[the] house years before a sale which occur[red] during a pandemic."

{¶ 13} In response, Leana argues that Troy "simply decided that he would not comply with Court Orders," which was detrimental to her, because she would have received approximately $25,000 in equity from the sale or refinancing if Troy had complied with the decree of divorce. She asserts that Troy should not be rewarded for his "complete disregard" for the court's order, "which then caused there to be little to no equity as it relates to the sale of the marital home."

{¶ 14} Leana disagrees with the characterization of the court's order as a modification the property division in the divorce decree; rather, she says, the court simply ordered Troy to pay her what the court and both parties "believed to have been her portion of the equity" in the home if Troy had done what he was ordered to do in the divorce decree. Leana argues that the court did not violate Troy's due process rights, and that he did not provide any evidence that his inaction and violation of the decree was not the cause of the decreased value of and equity in the house. She asserts that it would have been unreasonable for Troy to face no consequences for blatantly refusing to comply with a court order, to the detriment of both parties. Finally, Leana asserts that, with a mortgage balance of $156,863.82 at the time of the divorce, there was "a possible equity amount of $50,136.18" based on the court's valuation of the property at that time.

{¶ 15} In reply, Troy asserts that he does not challenge the finding of contempt on appeal, i.e., the fact that he did not follow the court's orders relating to the timing of the listing and sale of the house. Rather, he challenges the court's award based on " 'potential equity' identified *by the court*, before payments of marital debt," which was not based on what Leana would have actually received. Troy contends that the decree required him

to sell or refinance, pay the debts at closing, and then, if anything were left, "divide any equity," which is different from construing the decree to require him to pay Leana $25,000. Troy further argues that Leana lost nothing by the sale.

**{¶ 16}** Troy argues that the purpose of civil contempt is not to punish, and that the court gave Leana "a windfall amount" that she never would have gotten "in the wildest circumstances in this case," because there was no evidence that the house decreased in value due to his action or inaction, "as opposed to the market or the World at that time."

**{¶ 17}** The following is well-settled:

In a civil contempt case, the purpose of the punishment is to coerce the contemnor to obey a judicial order for the benefit of a third party. *Nichol v. Nichol* (May 8, 2000), 7th Dist. No. 97-CA-143, 2000 WL 652537, citing *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 711, 681 N.E.2d 1383. Further, the " 'contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered.' " *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 139, 15 OBR 285, 472 N.E.2d 1085, quoting *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 18 O.O.3d 446, 416 N.E.2d 610. Civil-contempt sanctions, such as a jail sentence, are merely conditional. Therefore, the trial court is obligated to provide the contemnor with a means to purge his contempt. *Nichol*, citing *State v. Kilbane* (1980), 61 Ohio St.2d 201, 206-207, 15 O.O.3d 221, 400 N.E.2d 386.

*Polk v. Polk*, 188 Ohio App.3d 809, 2010-Ohio-3555, 937 N.E.2d 124, ¶ 104 (2d Dist.).

**{¶ 18}** This Court has noted:

"A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. Clear and convincing evidence is the standard of proof in civil contempt proceedings. *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (Mar. 22, 1996) citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). (Other citations omitted.) " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

*Eldridge v. Eldridge*, 2d Dist. Greene No. 2018-CA-17, 2019-Ohio-233, ¶ 21.

**{¶ 19}** R.C. 3105.171(I) provides: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both

spouses." In *Passage v. Passage*, 2d Dist. Greene No. 2015-CA-36, 2016-Ohio-1097, this Court concluded "that under R.C. 3105.171(I) as amended, parties can agree to give the trial court post-decree jurisdiction over property divisions. However, the court's ability to modify the property division should be narrowly limited to the terms expressed in the agreement, due to long-standing principles surrounding the finality of decrees." *Id.* at ¶ 51.

{¶ 20} At the time of the hearing on Leana's motion to show cause, the marital residence had been sold. Troy testified that he had made all of the house payments, and Leana testified that, beyond her attorney fees and court costs, she incurred no further expenses related to the home. The final decree made clear that the parties were entitled to an equal share of the equity, if any remained, from the sale of the marital residence. While the court indicated that "it was anticipated" that Leana would receive approximately $25,000 for "her interest in the marital real estate," we note that the marital debts to be paid from the proceeds of the sale reflected in the final decree totaled $58,845.90. The February 26, 2018 decree of divorce stated that the "most current mortgage balance" was $156,863.82 (from June 2016). Even if the home had sold for $207,000, and the mortgage balance had been deducted therefrom, only $50,136.18 would have remained to pay the debt, leaving no equity for either party. The decree identified this amount as "*possible* equity," acknowledged the possibility that there may not be enough equity to pay the marital debt, and provided for that contingency. Even if the home had sold for $207,000 and the mortgage balance of $145,000 (per Troy's hearing testimony) had been deducted, only $62,000 would have remained, less expenses. Troy correctly asserts that Leana would not have received an amount close to $25,000.

**{¶ 21}** We conclude that the trial court's order operated to modify the property division of the final decree, contrary to R.C. 3105.171(I), and that the court lacked the authority to order the change. Since an abuse of discretion is demonstrated, Troy's assigned error is sustained. The portion of the court's order requiring Troy to pay Leana $25,000 is accordingly reversed. Insofar as the trial court awarded attorney fees and court costs, the judgment is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Thomas Eagle
April Moore
Hon. Steven L. Hurley