and chattels and can be given no application to the sale of real property.

Counsel for the appellants urges also that the amended petition states a cause of action based on constructive fraud or deceit. An examination of the same reveals that it contains no allegation of the concealment of any facts relating to the present condition of the house or that the defendants knew of any such defects. These allegations are essential in order to sustain an action for fraud or deceit.

It is, therefore, our conclusion that the amended petition fails to state a cause of action, either upon the theory of fraud or upon that of an implied contract. Therefore, the court properly sustained the demurrer to the petition, and the judgment is affirmed.

*Judgment affirmed.*

PETREE, P. J., and BRYANT, J., concur.

THE STATE OF OHIO, APPELLEE, *v.* LETT, APPELLANT.*

*Motion to certify the record overruled, May 7, 1958.

(No. 2447—Decided February 6, 1958.)

*Mr. Mathias H. Heck,* prosecuting attorney, *Mr. Herbert M. Jacobson* and *Mr. John R. Hoover,* for appellee.

*Mr. Clarence J. Stewart* and *Mr. William H. Wolff,* for appellant.

CRAWFORD, J. Defendant, appellant herein, appeals his conviction of armed robbery. The state's evidence connecting him with the crime consists largely of the testimony of two accomplices, Robert Lee Nichols and Charles Lee Ison. It also included the testimony of Lois and Clifford Barrows, in whose home, it was testified, those accused of the robbery appeared around the time of its commission. Defendant contends that the testimony of these witnesses is so inconsistent as to be incredible, so that the judgment of conviction should be reversed upon the weight of the evidence.

The robbery in question was committed on September 16, 1954, in Husti's Grill just south of Dayton, Ohio. The state charged that defendant, Benjamin H. Lett, although not physically present in the grill, planned and directed the crime and was in the vicinity at the time of its commission and furnished transportation to the active participants.

The indictment was returned on May 25, 1957. The trial began on August 5, 1957, and the verdict of guilty was returned on August 16, 1957.

Several obvious inconsistencies in the testimony of the state's witnesses are conceded.

Most of these pertain to the movements of the participants and their associates around the time of the robbery. The surreptitious movements of those engaged in the practice of crime often present a curious and busy pattern when revealed under the searching scrutiny of a public trial. In view of the somewhat complicated details of the clandestine business in hand, together with the lapse of nearly three years since their occurence and a natural sense of apprehension in the minds of some who attempted to relate them (such as the Barrows), per-

haps it is hardly reasonable to expect an entirely clear, consistent and logical account.

There is sharp conflict in the testimony as to whether Nichols and Ison were patrons of Husti's Grill prior to the robbery.

Nevertheless, on the vital facts pertaining to the commission of the crime and the defendant's connection therewith, there was substantial evidence, sufficiently consistent within itself, to support the verdict. The jury chose to believe this testimony, regardless of other inconsistencies. Hence we would not be justified in disturbing the judgment on the weight of the evidence. 3 Ohio Jurisprudence (2d), 821, Appellate Review, Section 821.

Defendant's second assignment of error pertains to the court's refusal to permit him to offer certain testimony in rebuttal.

In the process of proving the corpus delicti, witnesses for the state testified, among other things, that one Willard Prince was present at the commission of the robbery, acting as a lookout. Prince is under separate indictment for this same robbery and has served notice of an alibi.

Prince appeared as a witness for the defendant, Lett, and testified that he was not in or near Dayton at the time of the robbery, but that he was in Kentucky. This was, of course, an attack upon the credibility of witnesses for the state. After the defendant rested, the state was permitted to produce the testimony of two eye-witnesses, Mildred Hatfield and Billy Walters, both of whom identified Prince and testified that they encountered him upon entering or attempting to enter Husti's Grill during the robbery.

The state contends that these two were rebuttal witnesses, produced to meet the claim that Prince was not present, and that this issue was first raised by defendant. The defendant claims that these two witnesses merely gave additional testimony which could have been produced by the state in chief; and that after they testified the defendant should have been permitted to produce witnesses in rebuttal.

As indicated by authorities cited in the briefs, the dividing line between what is properly rebuttal and what is evidence in

chief is not always easy to fix, so that considerable discretion must be reposed in the court to determine the order and latitude of proof. 23 Corpus Juris Secundum, 456, Criminal Law, Section 1051; *Webb* v. *State,* 29 Ohio St., 351.

Yet this evidence of the state was essentially rebuttal. As pointed out by the prosecuting attorney, the presence or absence of Prince at the robbery was wholly collateral to the main issue of the case; it did not prove or disprove the guilt or innocence of the defendant on trial. It was merely an attendant circumstance in the evidence of the robbery.

In the opening statement defendant's counsel said: "As far as the defense is concerned in the trial of this case we do not know whether there was a holdup or not, and we are not interested in that phase of it. If the state's testimony shows that there was a holdup at that place on the 16th day of September, 1954, we will not contest it."

The issues being thus defined it was not incumbent upon the state in an otherwise protracted trial of the defendant, Lett, to digress by proving its case against another defendant not on trial. The state was not required to anticipate the defense. 39 Ohio Jurisprudence, 644, Trial, Section 71. Much less was it required to anticipate the defense of an adverse witness under separate indictment.

The incidental circumstance of Prince's presence or absence was in no sense an issue in this case, until the defendant made it so. The fact that the issue when raised was collateral, or even immaterial, would not render the state's rebuttal evidence thereon inadmissible. *Neff* v. *Kester,* 24 Ohio Law Abs., 267, 107 N. E. (2d), 215.

Inasmuch as the defendant first raised the issue and produced his evidence in support thereof, the state was entitled to an opportunity to rebut it. In doing so, the state introduced no new matter, so that there was no occasion for surrebuttal by the defendant.

After the particular issue was raised both sides had ample opportunity to present in proper order their evidence thereon. Hence there was no abuse of discretion, and no prejudice to either side.

Defendant claims he was prejudiced by misconduct of the

prosecutor in making the following statement: "Ladies and gentlemen, we have tried our best to remove what we think is a cancerous situation in the city of Dayton and in this community. We hope you will help us remove it."

Defendant moved that the statement be stricken and the jury instructed to disregard it. The court sustained the motion and so instructed the jury.

We are not furnished the context in which this statement was made. Hence we cannot determine its exact application.

Defendant compared these words to those sometimes used by prosecutors in expressing personal belief in the guilt of the accused. The vice which has been declared inherent in statements of that kind is that the jury may understand such opinion or belief to be based upon something which the prosecutor knows outside of the evidence, so that he is in effect making himself a witness without submitting to cross-examination, and is injecting his personal or official influence into the case. *State* v. *Thayer*, 124 Ohio St., 1, 176 N. E., 656, 75 A. L. R., 48. The words quoted, standing alone as they do in this record, appear sufficiently general to be free from this vice.

It is customary and permissible for a prosecutor to deplore crime and to speak disparagingly of persons on trial accused of crime. So long as he does not exceed the bounds of reason and good taste so as to create a danger of inflaming and unduly influencing the jury, there can be no complaint. Views may differ as to when the limits of propriety are reached. The court here sustained the defendant's objection to the statement made and instructed the jury to disregard it. We must presume that the jury proceeded regularly in observing this admonition. The words do not appear to be so highly inflammatory as to prevent the jury from deciding the cause upon fair and calm deliberation. The defendant's further motion to withdraw a juror and declare a mistrial was, therefore, properly overruled.

These words of the prosecutor were made the basis of one of the grounds of defendant's motion for a new trial, which motion was overruled.

"* * * the discretion of the trial court in denying a motion for a new trial because of misconduct of the prosecuting attorney in argument to the jury will not be disturbed by a reviewing

court in the absence of an abuse of the discretion." 16 Ohio Jurisprudence (2d), 40, Criminal Law, Section 665.

The trial court heard the entire argument. We must assume, therefore, the soundness of his discretion in finding that the words quoted were not so employed as to be prejudicial.

No error prejudicial to the defendant appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.