[Cite as *State v. Moore*, 2012-Ohio-3604.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24957 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-2554 |
| v. | : | |
| | : | |
| PAMELA S. MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of August, 2012.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JEREMIAH J. DENSLOW, Atty. Reg. #0074784, First National Plaza, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Pamela Moore appeals from her conviction for aggravated theft. Finding no

merit in any of the allegations of error, we affirm.

{¶ 2}     Moore had worked in the mortgage and title insurance business for 23 years when, in 2006, she opened her own title agency. In the new agency, Moore acted as both a real-estate title agent and a title-insurance agent. Moore contracted with Chicago Title Insurance Company to be her underwriter. She hired Melissa Brown to help her in the office. Moore also set up a bank account that the agency could use to pay its expenses. And she set up an escrow account to hold money from her clients while their transactions were pending.

{¶ 3}     Moore had been renting a home in Centerville. When she fell behind in her rent, her landlord, Phil McBride, started eviction proceedings. Moore asked McBride if she could buy the house, and McBride agreed. They settled on a price of $190,000. At the closing, Moore gave McBride two checks drawn from the escrow account. One check (State's Ex. 7), was to Spectrum Real Estate Inc., McBride's corporation, for $36,761.59. The other check (State's Ex. 8) was to Citizens National Bank for $143,800.32 to pay off the existing mortgage. Moore did not have the money to pay for the house–she had not obtained a loan. Consequently, the money she gave McBride was her clients'.

{¶ 4}     Eventually, a team from Chicago Title's parent company visited Moore and reviewed her records. Their investigation revealed several significant problems. One problem they discovered was that Moore had written a $17,000 check drawn from the escrow account to pay CFA Networks for computer equipment and services. Ultimately, the parent company team took over Moore's business.

{¶ 5}     Moore was charged with one count of aggravated theft under R.C. 2913.02(A)(2) for taking over $100,000 from the escrow account. A jury found her guilty.

**{¶ 6}** Moore appealed. She now assigns five errors to the trial court.

## The Disallowance of Surrebuttal Testimony

**{¶ 7}** After the defense rested, the state called the defendant's former employee, Melissa Brown, as a rebuttal witness. The first assignment of error alleges that the trial court erred by not permitting Moore to present surrebuttal testimony to rebut Brown's testimony.[1] Moore contends that she had a right to present surrebuttal testimony. Alternatively, Moore contends that even if she did not have the right, the trial court still should have permitted it.

**{¶ 8}** A defendant must be permitted to present surrebuttal evidence (provided it isn't merely cumulative or corroborative) if "the prosecution in rebuttal introduces new matter." *State v. Gibbs*, 2d Dist. Miami Nos. 83 CA 7, 83 CA 37, 1983 WL 2546, *3 (Nov. 18, 1983); *State v. Carrasquillo*, 9th Dist. Lorain No. 09CA009639, 2010-Ohio-1373, ¶ 11 ("Surrebuttal is only considered a right when new matters are first introduced on rebuttal." (Citation omitted.)). The defendant must then be permitted to present evidence that rebuts this new matter–but only the new matter. *Id.* ("[I]t is only new matter adduced by the prosecution that [the] accused may rebut on surrebuttal[.]"). "'Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party.'" *State v. Carrasquillo*, 9th Dist. Lorain No. 09CA009639, 2010-Ohio-5063, ¶ 13, quoting *State v. McNeill*, 83 Ohio St.3d 438, 446, 700 N.E.2d 596 (1998).

**{¶ 9}** Moore proffered this surrebuttal testimony: "[W]e would have a witness who would directly dispute aspects of Missy Brown's testimony, most specifically those relating to

---

[1] The state also called Nancy Bruggeman in rebuttal, but the assignment of error concerns only Brown's testimony.

the taking of Ms. Moore's property and the altercation that occurred at her house and various other aspects of her testimony." (Tr. 503-504). To provide context for the rebuttal/surrebuttal issue, we review the specific areas of testimony. Pamela Moore had testified that she did not have a copy of a critical missing loan-approval letter because when the business closed [in August 2007] Missy Brown had taken records from Moore's office. (Tr. 397). Moore said Brown took everything needed to start a title company and also took personal information and medical bills for her children. (*Id.*). In response, the state asked its rebuttal witness, Missy Brown, if she had taken items from the office when it closed. (Tr. 444). Brown admitted she had taken a box of materials (Tr. 446), although she said it was with Moore's knowledge (Tr.445-46). The materials included an instructional binder, a Rolodex, business forms, and the like. (Tr. 444). Brown denied taking the defendant's personal items, children's medical records or the loan-approval letter. (*Id*.). Three to five days later, Moore came to Brown's house and got the box. (Tr. 447). In cross-examination, counsel for the defendant asked Brown if she had the items from the box "strewn out in your living room." (Tr. 488). Brown denied this. (*Id*). Counsel then asked, "And it's your testimony that you just gave [her] the box and they went out calmly and there were no problems?" Brown said "correct." (Tr. 489).

{¶ 10}    Evid.R. 103 provides that "[e]rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected" and, "[i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Evid.R. 103(A)(2). "If a party claiming error is unable to establish the first requirement, the error is deemed harmless. If the party is unable to establish the second requirement, the error is

deemed waived." *Campbell v. Johnson*, 87 Ohio App.3d 543, 551, 622 N.E.2d 717, 723 (2d Dist. 1993). "While the proffer of the expected testimony need not be as specific as the testimony itself would have been it must nonetheless be sufficient to enable the reviewing court to determine roughly what, if any, impact the testimony may have had upon the final disposition of the case." *State v. Darrah*, 12th Dist. Warren No. CA2006-09-109, 2007-Ohio-7080, ¶ 22, quoting *Moser v. Moser*, 72 Ohio App.3d 575, 580, 595 N.E.2d 518 (3d Dist.1991). Given the preceding evidentiary context, the proffer—that the defense would call a witness who would further discuss the taking of the document box, and who would dispute whether there was an altercation during retrieval of the box, which was a year after the purported aggravated theft—is not only irrelevant but could be viewed as cumulative. We agree with the trial court's finding that "the evidence would not be appropriate under the rules of evidence." The trial court observed: "We don't go into many trials[2] on other issues as to credibility. They're not germane to the charge that is pending." (Tr. 504).

{¶ 11} In addition to the proffer, in her brief, Moore identifies a list of "new" facts that she says the state introduced with Brown's rebuttal testimony that her surrebuttal testimony would contradict. Most of the "new" facts identified by Moore are no more than a variation on the issues previously presented rather than new evidence. For instance, appellant argues:

{¶ 12} **(a)** Brown said that Moore was the only person who issued checks. But Moore's own testimony had indicated that "I cut the checks" (Tr. 385) for the unfunded

---

[2] From the context of the court's ruling, we suspect the words "many trials" may have been "mini-trials," but we adhere to the record as presented.

closing on her house, and she wrote the $17,000.00 escrow check to CFA (Tr. 369 & 371), though Brown would often prepare checks;

{¶ 13} **(b)** Brown said that, in 2007, the business moved from Springboro in Warren County to West Carrollton in Montgomery County. But Moore had testified that the business opened in Springboro in April 2006 where it operated for six months before moving. (Tr. 373). She also said that the move occurred well after October. (*Id*.);

{¶ 14} **(c)** Brown said that the business was shut down during the first week of August 2007 by a team from Chicago Title Insurance Company. But Steve Hamlin, the director of internal investigations for Chicago Title's parent company, Fidelity National Financial, had already testified that he and his team met with Moore during the first week of August 2007, and that, after their examination, Fidelity took control of Moore's escrow accounts. (Tr. 318 & 330);

{¶ 15} **(d)** Brown said that she and another person were going to start their own title agency after Moore's business was shut down. But Moore had already similarly testified that Missy Brown had taken everything from her office necessary to start her own title company. (Tr. 397);

{¶ 16} **(e)** Brown said that after the move to Montgomery County, CFA Networks continued to remedy their computer problems. Moore's testimony indicates the $17,000.00 paid to CFA included a service contract. (Tr.372). A fair reading of her testimony indicates this continued after the move to Montgomery County. (*Id*.) Moreover, Todd Roberts, a CFA employee at the time, had testified that Dedicated Land Title was an ongoing client of CFA before and after the October 2006 $17,000.00 check. (Tr. 188);

{¶ 17}   **(f)** Brown said that Moore herself retrieved a document  from the filing cabinet immediately before the $17,000 check was written to CFA Network. Moore had testified that Brown gave her the check, which Moore then wrote. (Tr. 371).

{¶ 18}   Although the foregoing two accounts on the same subjects differ, if this is "new " evidence conferring a right to surrebuttal, any different contradicting evidence on the same subject would be subject to endless re-contradiction.

{¶ 19}   There are three facts from Brown's testimony, identified in Moore's brief as "new," which are arguably new: (1) that business began to slow in January or February 2007, (2) that around the same time Moore told Brown to hold checks rather than send them promptly to lenders, and (3) that Brown noticed other irregularities in 2007 that caused her to call prosecutors. (Tr. 440-41). Significantly, appellant did not proffer that she had any contradictory evidence to offer on these issues. Nevertheless, even if these are new facts, and even if appellant had contradictory evidence, Moore was not prejudiced by the exclusion of testimony rebutting them. These facts, which are actually interrelated into one issue—why Brown called the authorities—have little, if any, bearing on whether Moore committed the charged offense five or six months earlier. This evidence is so far removed from evidence of Moore's guilt that the jury's verdict certainly would have been the same. Accordingly, Moore has suffered no prejudice by the exclusion of this surrebuttal.

{¶ 20}   In addition, some of the "new" facts Moore identifies were brought out by the defense during Brown's cross examination. But Moore plainly is not entitled to rebut these facts. A defendant is entitled to surrebut only new matter introduced "by the prosecution in rebuttal." The defendant cannot rebut matters she herself introduced. *Weimer v. Anzevino*, 122

Ohio App.3d 720, 726, 702 N.E.2d 940 (7th Dist. 1997) ("[A]ppellant cannot rebut evidence that was introduced by appellant's own counsel. Appellant may rebut evidence adverse to her side, but that evidence must be introduced by the opposing party and not by appellant herself.").

{¶ 21}  Finally, we cannot say the trial court abused its discretion by disallowing surrebuttal. "If testimony introduced by the prosecution is merely in rebuttal, it is discretionary with the trial court whether to permit surrebuttal." *Gibbs* at *3, citing *State v. Lett*, 106 Ohio App. 285, 154 N.E.2d 445 (2d Dist.1958). "A court does not, *ipso facto*, abuse its discretion in denying a criminal defendant the opportunity to present surrebuttal testimony." (Emphasis sic.) *State v. Spirko*, 59 Ohio St.3d 1, 28, 570 N.E.2d 229 (1991). The trial court's rationale for exclusion appears to be that the proposed surrebuttal was not relevant or would merely go to credibility rather than whether Moore committed the charged offense. The court's rationale is a valid concern to avoid a diversion into collateral matters.

{¶ 22}  The first assignment of error is overruled.

### Denial of Motion for Acquittal for Failure to Prove Venue

{¶ 23}  The second assignment of error alleges that the trial court erred by overruling Moore's motion for acquittal based on improper venue. Moore says there are two alleged transactions that constituted the state's case against her–buying the house and paying CFA Networks–and both occurred while Moore's business was still in Warren County. She contends the state failed to prove that venue for either was proper in Montgomery County.

{¶ 24}  When a charged offense involves taking property unlawfully, venue is proper

in any county from which or into which the property was taken. R.C. 2901.12(C). Needless to say, aggravated theft involves taking property unlawfully. *See* R.C. 2913.02(A)(2). And Moore was alleged to have taken escrow-account funds. Testimony shows that she constructively brought the stolen funds into Montgomery County. Moore's[3] and McBride's[4] testimony indicates that they met and closed on the house in the Centerville Public Library, which is in Montgomery County. There Moore gave McBride two checks totaling about $180,000, which he deposited in a nearby bank. Therefore, venue in Montgomery County was proper.

{¶ 25}   While there is little evidence establishing a connection between Montgomery County and the escrow-account funds that Moore used to pay CFA Networks, the trial court's explanation for rejecting Moore's venue challenge got the analysis right:

> It's problematic in that we have a single count indictment here alleging
>
> an aggravated theft. You're trying to segregate out one transaction. I don't

---

[3]When Moore was asked if the closing occurred at the Centerville Public Library, she replied, "I think it was." (Tr. 386). And Moore later referred to the library as the closing site. When she was asked why she did not stop payment on the checks she gave McBride, Moore explained, "Because, well, one, that day when I met with Phil, Phil is a major shareholder in Citizens National, and he said that when he leaves he was going in–the library is literally around the corner from the bank. And he said, 'When I leave I'm going straight over to the bank,' because that's why I gave him the payoff check." (Tr. 406).

[4]When McBride was asked whether he "recall[ed] then going to the Centerville Public Library to close this real estate transaction," this exchange followed:
A. "It would make sense that we went there. But I'm not exactly sure of that. I know my office was in the process–we were closing it down. And I know it wasn't in Pam's office. So it was probably a mutually agreed upon location."
Q. "Have you ever done closings there before?"
A. "Yes, I have."
(Tr. 143).

think there's any evidence before the Court that the check was written or presented in Montgomery County, but nonetheless, it's not sufficient to grant a directed verdict on the offense that's charged in the indictment. It's simply a matter that goes to the weight of the evidence. And the Court finds that there's ample evidence that the transaction that did clearly exceed $100,000. [sic] If the Jury believes that the elements apply, it does support the conviction on the charge that has been filed.

(Tr. 502-503).

{¶ 26}   We note too that even if the CFA Networks transaction could be considered a separate offense, venue in Montgomery County would still be proper either because the victims–the escrow-account fund owners–are the same as those in the house-purchase transaction, *see* R.C. 2901.12(H)(1), or because Moore committed both offenses in her capacity as title agent, *see* R.C. 2901.12(H)(2).

{¶ 27}   The second assignment of error is overruled.


**Proving the Escrow-Account Funds' Owner**

{¶ 28}   The third assignment of error alleges that the evidence presented is insufficient to find Moore guilty of aggravated theft because the evidence fails to establish that the owner of the escrow-account funds identified in the indictment, Chicago Title Insurance Company, in fact owned the money. The state concedes that Chicago Title was not the escrow-account funds' owner, but it contends that it did not need to prove who owned the funds.

{¶ 29} Evidence is legally insufficient to find guilt if a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The identity of the victim is not an essential element of aggravated theft. *State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040, ¶ 10-27 (concluding that the evidence was sufficient to find the title-insurance agent guilty under R.C. 2913.02(A)(2) for taking escrow-account funds even though the evidence did not establish the funds' specific owner). Therefore, Moore's sufficiency challenge must be rejected.

{¶ 30} Moore's argument, though, is not really a sufficiency challenge. Rather, the argument seems to be that because the indictment identifies Chicago Title as the owner the state was required to prove the same. This is incorrect.

{¶ 31} A difference between an allegation in an indictment and the evidence presented at trial may be a problem if the difference is in "a matter essential to the charge." *State v. Smith*, 2d Dist. Montgomery No. 24402, 2012-Ohio-734, ¶ 30, citing *State v. Brozich*, 108 Ohio St. 559, 141 N.E. 491 (1923), paragraph one of the syllabus. The name of the victim is not a matter essential to the charge of aggravated theft: "Ohio law does not require that a victim be named in an indictment when the identity of the victim is not an essential element of the crime." *State v. Cicerchi*, 182 Ohio App.3d 753, 2009-Ohio-2249, 915 N.E.2d 350, ¶ 35, fn. 7 (8th Dist.).

{¶ 32} Even if the name were essential, Crim.R. 33 and R.C. 2945.83 provide that a conviction may not be reversed because of "[a] variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby." Crim.R. 32(E)(2); *accord* R.C.

2945.83(B) (substantially the same). Moore does not claim that she was mislead or prejudiced by the difference here. Indeed, she knew well before trial that the state no longer believed that Chicago Title was the owner. The state recognized its mistake well before trial, and in a July 22, 2011 motion, the state asked the trial court to remove this allegation from the indictment either by striking it as surplusage under Crim.R. 7(C) or by amending the indictment under Crim.R. 7(D). In the motion, the state said that, though Chicago Title, as the underwriter, is liable for the missing escrow-account funds, and therefore is a victim, the company did not own the funds, which were actually owned by Moore's clients. Moore did not object to the state's motion. The trial court never ruled on it explicitly. Generally, if a trial court enters judgment without ruling on a motion, we presume the motion was denied. *State v. Alltop*, 2d Dist. Montgomery No. 24324, 2011-Ohio-5541, ¶ 18. Here, though, an intent to sustain the state's motion is indicated by the jury instructions: nowhere in them is Chicago Title mentioned. In particular, instructions about the charged offense leave out the indictment's identification of the funds' owner. While the indictment pertinently alleges that Moore took the funds "with purpose to deprive the owner, to-wit: Chicago Title Insurance Company of property or services," the jury instructions omit Chicago Title's name, saying only "with purpose to deprive the owner of property."

{¶ 33} Finally, Robert Smith, assistant legal counsel to the State Auditor, testified about the nature of a title company escrow account. Money in the account is not specifically identifiable to an individual. He referred to it as a "fungible bulk." (Tr. 298). Therefore, on August 7, 2006, when Moore issued two checks drawn on the escrow account in the approximate sum of $180,000.00 (State Ex.s 7 & 8), at a time when the account had a balance

over four million dollars (State Ex. 11), the particular party or person that the money was taken from was unidentifiable.

{¶ 34}  The third assignment of error is overruled.

## Secondary Evidence to Prove the Contents of the Letter

{¶ 35}  The fourth assignment of error alleges that the trial court erred by not permitting Scott Moore, Defendant-Appellant Moore's former husband, to testify about the contents of a mortgage pre-approval  letter that Moore claims she received from Union Savings Bank, which she says Scott saw and read. "The decision whether to admit evidence is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion. An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude by the court." *Baker v. Chrysler*, 179 Ohio App.3d 351, 2008-Ohio-6032, 901 N.E.2d 875, ¶ 20 (2d Dist.), citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 129-130.

{¶ 36}  In her brief, Moore contends that Scott's testimony should have been permitted under Evid.R. 1004 because the letter is a lost document. Evid.R. 1004 is a best-evidence rule providing that "[w]hen an original writing is lost or destroyed and the writing is not closely related to a controlling issue, its contents may be proved by secondary evidence," which "includes the testimony of a witness who recalls the content of the writing." *Terrace Creek Assn. v. Smith*, 2d Dist. Montgomery No. 18543, 2001 WL 524382, *3 (May 18, 2001). Initially, we note that whether Moore had a loan approval was, according to Moore's own arguments, a critical issue. Scott's testimony would not be admissible under the

rule. In addition, Moore's argument to the trial court barely hints at Evid. R. 1004 as the basis for admission.

{¶ 37} The state had objected to Scott's testimony about the contents of the letter on the basis of hearsay. Defense counsel told the court that the letter "was the preapproval document that Pam Moore got." (Tr. 344). Scott, said counsel, "is going to come in and say that he saw this preapproval document." (Tr. 345). The trial court replied, "What personal knowledge would he have? I mean he can't testify about a document. He can testify about preapproval if he is a party to the loan." (Tr. 345). Counsel's position was that "a document can be testified to about hearsay [sic] if it can't be produced, if it hasn't been kept in the ordinary course. It's like a witness unavailable." (Tr. 347). "But," said the court, "you're trying to prove the contents of the document without the document. And the only person that can testify to that frankly is your client then if she was the loan applicant. You can't do it through other people." (Tr. 347). The court explained that "if you're going to try and establish that there was a loan commitment made you've got to either do that with a document that exists or you have to do it through her testimony or through a person at the bank who was a part of the transaction." (Tr. 349). Counsel disagreed, saying that "a missing document, one that cannot be found, is like a Declarant unavailable." (Tr. 349). "No, no," said the court, "you're trying to create something out of oil [sic] cloth. You can't do it through hearsay testimony of somebody who say[s], 'I saw a document.' And matter of fact, he can't testify just because he saw a document to the contents of the document even if the document exists. * * * You've got to authenticate that document through a person with personal knowledge of the contents." (Tr. 349-350). To this Moore replied, "I would agree entirely with that, but not

when a document is unavailable. We have a Declarant who is unavailable." (Tr. 350).

{¶ 38}   Moore took the stand instead of Scott and said that she received a preapproval letter from Union Savings Bank. After she finished testifying, Moore again tried to admit Scott's testimony about the letter's contents. This time, Moore's counsel argued only that Scott's testimony was admissible hearsay: "I think hearsay would be admissible after they tried to impeach my client, which they did. They tried to challenge her as to whether or not this even existed, and so at that point then it's allowed in to corroborate." (Tr. 415). But the trial court did not allow it: "I'm still not going to let him testify as to the contents of a document that doesn't exist." (Tr. 415).

{¶ 39}   "'Proving the contents of a writing presents problems with hearsay, authentication, and the best evidence rule.'" *SFJV 2005, L.L.C. v. Ream*, 187 Ohio App. 3d 715, 2010-Ohio-1615, 933 N.E.2d 819, ¶ 46 (2d Dist.), quoting *State v. Carter*, 4th Dist. Ross No. 99 CA 2479, 2000 WL 1466189, *5 (Sept. 26, 2000). All three rules are prerequisites to admission, meaning that all three must be satisfied before content evidence may be admitted. Here the trial court first excluded Scott's testimony because the letter was not authenticated. *Accord id.* at ¶ 47 ("Documents must be authenticated or identified prior to their admission into evidence," citing Evid.R. 901.). The second time that the court excluded the testimony could have been on best-evidence grounds, though Moore's argument was admissible hearsay.

{¶ 40}   Regardless, even if the trial court did err by excluding Scott's testimony about the letter, Moore suffered no prejudice. Moore herself testified that she received the preapproval letter:

Q. After you started the loan process * * * did you receive any approval?

* * *

A. Yes, I did. I received the letter at my home.

Q. Did Scott know that you had started this loan process?

A. No.

* * *

Q. Did you keep it a secret from Scott what was going on?

* * *

A. I kept that secret from him.

Q. Was there ever a time that he found out that you had been approved for a loan?

A. Yes.

* * *

Q. Do you know how he found out?

A. I wasn't home and he came in and I had–I worked out of–on my kitchen table I had a lot of like papers and documents every night. * * * I had a file and it was my personal file and it was on the table. And he got to it before I got home and he saw the letter.

(Tr. 362-364).

{¶ 41} Also, after Moore testified, Scott took the stand. The trial court did allow some oblique testimony from him about the letter. Defense counsel asked Scott about a day he stopped at Moore's house:

Q. Is that also the day that you saw a certain piece of

paper sitting on the kitchen table?

A. That was actually a couple of days later. I had stopped off into the house.

Q. What did that piece of paper cause you to do?

A. The paper that I saw on the table created an issue, an argument between me and Pam.

* * *

Q. All right. After you saw that piece of paper, did you know that you and Pam were done for good?

(Tr. 417-418). Scott here unmistakably refers to the preapproval letter, corroborating Moore's testimony. Had Scott been allowed to testify about the letter more directly, the outcome of the trial would not have been any different.

**{¶ 42}** Moore contends, though, that the trial court deprived her of her right to remain silent and not testify. She asserts that, because Scott could not testify about the letter, she was essentially forced to testify in his place. "The Fifth Amendment right against self-incrimination is a personal right 'that can only be invoked by the individual whose testimony is being compelled.'" *State v. Williams*, 99 Ohio St. 3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 29, quoting *Moran v. Burbine*, 475 U.S. 412, 433 fn. 4, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). There is no self-incrimination problem, though, if evidence is improperly admitted and a defendant decides to testify to lessen or overcome the impact of the improperly admitted evidence. *State v. Hawn*, 138 Ohio App. 3d 449, 467, 741 N.E.2d 594 (2d Dist.2000). The defendant's testimony is "not compelled in the constitutional sense or

otherwise derived from the illegality of the improperly admitted evidence." *Id*. We note too that Moore testified on a wide range of topics, not just the letter. Compared to her testimony on other topics, Moore's testimony about the letter was relatively brief.

**{¶ 43}** The fourth assignment of error is overruled.

### The Jury Instructions

**{¶ 44}** The fifth and final assignment of error alleges that the trial court erred by giving the jury an incorrect and misleading instruction. Moore contends that the instruction is misleading and confusing and fails to state the applicable law fairly and accurately. "The trial court retains discretion on how to conform the jury instructions to the evidence presented at trial." *State v. Condon*, 152 Ohio App. 3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶ 90 (1st Dist.), citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981). The trial court here did not abuse its discretion.

**{¶ 45}** Jury instructions "'must be a correct, clear, and complete statement of the law applicable to the case.'" *McBride v. Quebe*, 2d Dist. Montgomery No. 21310, 2006-Ohio-5128, ¶ 50, quoting *Roberts v. State Farm Mut. Auto. Ins. Co.*, 155 Ohio App.3d. 535, 2003-Ohio-5398, 802 N.E.2d 157, ¶ 48 (2d Dist.). And they "should be tailored to the facts of the case." (Citation omitted.) *Condon* at ¶ 90.

**{¶ 46}** The instruction Moore challenges is this one:

A title agent must keep funds in an escrow account separate from funds being held by the agent in any other capacity. A title agent is allowed to hold the funds in an escrow account in trust for a purchaser until the date of the closing. A title agent has no possessory interest in the funds in an escrow

account. A title agent merely maintains the escrow account in order to store funds belonging to other persons until the date the funds are needed to complete a real estate transaction.

After a closing has been completed, a title agent may then claim a portion of the funds as money earned by the agent as his fees or premiums. An escrow agent may not knowingly make a disbursement from an escrow account unless all of the funds necessary for the disbursement had been deposited or transferred electronically into the escrow account and are available for withdrawal or disbursement or had been physically received by the agent prior to the disbursement and are intended for deposit no later than the next banking day after the date of disbursement.

**{¶ 47}** The state had specifically asked the trial court to give an instruction like this, citing our opinion in *State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040. The *Clayton* defendant was also a title-insurance agent and also had been convicted of aggravated theft for taking escrow-account funds for his business and personal use. On appeal, he challenged his conviction based on the sufficiency and manifest weight of the evidence. We said the evidence showed that the defendant clearly had violated R.C. 3953.23(B), which contains "[t]he statutory bar to the transfer of escrow funds to a title agency's operating account." *Id.* at *¶* 20. The challenged instruction here is, in essence, our explanation of the statutory bar.

**{¶ 48}** Moore asserts that the instruction places an undue emphasis on civil regulations. The jury, she says, may have found her guilty because it found that she violated a

civil regulation, not because she violated the theft statute. As Moore admits, the instruction is a correct statement of law that applies to the facts of this case. Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), at paragraph four of the syllabus. Other instructions make clear that the jury was to find Moore guilty only if it found beyond a reasonable doubt that she violated the theft statute. Moore says the trial court should have added cautionary language clarifying that a violation of the civil provisions does not equate to criminal guilt. But Moore did not ask the court to give a cautionary instruction.

{¶ 49} The fifth assignment of error is overruled.

{¶ 50} There being no merit to any allegation of error, the judgment of conviction is affirmed.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Jeremiah J. Denslow
Hon. Sumner E. Walters
(Sitting for Hon. Mary K. Huffman)