**BAKER et al., Appellees,**

v.

**CHRYSLER et al., Appellants.**

[Cite as *Baker v. Chrysler,* 179 Ohio App.3d 351, 2008-Ohio-6032.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2007–CA–87.

Decided Nov. 21, 2008.

Ronald J. Kozar, for appellees.

Kenneth R. Sheets, for appellants.

FAIN, Judge.

{¶ 1} Defendants-appellants Jack Chrysler and Richard Chrysler appeal from a judgment of the Greene County Court of Common Pleas, declaring, after a bench trial, Elizabeth Hosta to be the rightful owner of 30 shares of common stock in Kil–Kare, Inc., represented by Share Certificate No. 90. (Kil–Kare, Inc. also appealed the trial court's judgment; the company voluntarily dismissed its appeal in October 2008.)

{¶ 2} Defendants claim that the trial court erred in admitting certain documents at trial, in concluding that Hosta's claim to the shares was not barred by the doctrine of laches, by not holding that the stock certificate was transferred by Hosta to an unknown individual, and by admitting evidence of Hosta's purpose in signing the stock certificate. For the following reasons, we find each of defendants' arguments to be without merit, and we affirm the judgment of the trial court.

I

{¶ 3} This is the third appeal arising from a conflict between two factions of purported shareholders or directors of Kil–Kare Inc., a corporation operating a racetrack in Xenia, Ohio. We have previously addressed two appeals in a related action. *Hosta v. Chrysler*, 172 Ohio App.3d 654, 2007-Ohio-4205, 876 N.E.2d 998 (*"Hosta I"*); *Hosta v. Chrysler*, Greene App. Nos. 2008 CA 35 and 2008 CA 36, 2008-Ohio-4392, 2008 WL 3990813 (*"Hosta II"*).

{¶ 4} Beginning in the late 1970s, Richard Chrysler, father of Betty Hosta and Jack Chrysler, had effective control of a majority of Kil–Kare's shares, giving him control of the company. In April 1984, Richard Chrysler purchased 30 shares of Kil–Kare common stock, then represented by Stock Certificate No. 9, from Robert McCoy. Richard Chrysler promptly gave these shares, now represented by Stock Certificate No. 90, to his daughter, Betty Hosta. At Richard Chrysler's suggestion, Hosta signed her name to the back of the share certificate, and she gave the shares to Richard Chrysler to keep for her. For the next 21 years,

Richard Chrysler and Kil–Kare treated Hosta as a shareholder, including paying her dividends on a couple of occasions.

{¶ 5} In April 2005, Richard Chrysler suffered a stroke, rendering him incapacitated. After Richard Chrysler's stroke, Jack Chrysler believed that the 30 shares represented by Stock Certificate No. 90 had been indorsed in blank by Hosta and that he could exercise control over those shares as Richard Chrysler's attorney-in-fact.

{¶ 6} A dispute soon arose between Richard Chrysler's daughters, Susan Chrysler and Betty Hosta, and two of his sons, Jack Chrysler and William Chrysler, over the control of various shares and the company's management. The then existing board of directors of Kil–Kare—Hosta, Roy Baker, Marion Brooks, Richard Chrysler, and William Chrysler—was replaced by Jack Chrysler, William Chrysler, Ken Sheets, and Rick Chrysler, another son. Hosta, Susan Chrysler, Baker and Brooks (collectively "the *Hosta* plaintiffs") asserted that on October 25, 2005, Jack Chrysler, and William Chrysler used proxies obtained from Richard Chrysler at his nursing home to elect the new board of directors and that this election was held without summoning a shareholders' meeting as required by Kil–Kare's bylaws. Consequently, they brought suit against Jack Chrysler and William Chrysler, asserting a number of claims.

{¶ 7} The *Hosta* plaintiffs' lawsuit included a request for a declaratory judgment that Hosta was the owner of 30 shares of Kil–Kare stock and that Jack Chrysler lacked the authority to vote any shares of Kil–Kare stock controlled by Richard Chrysler. Richard Chrysler, as trustee, controlled 50 shares of Kil–Kare stock held by the Richard Chrysler Trust and 50 shares held by the Barbara Chrysler Trust. Also at issue were 41 shares of Kil–Kare stock held by Gilbert Trailer Rental, Inc., a corporation of which Richard Chrysler and Barbara Chrysler had been the sole owners.

{¶ 8} On August 24, 2006, the *Hosta* court held a trial on whether Hosta was the owner of 30 shares of Kil–Kare stock and whether Jack Chrysler and William Chrysler had the right to vote the shares of stock held by the Richard Chrysler Trust, the Barbara Chrysler Trust, and Gilbert Trailer. On November 3, 2006, the magistrate dismissed Hosta's claim regarding the 30 shares of Kil–Kare stock on the ground that Richard Chrysler, an indispensable party, was not a party to the litigation. The magistrate resolved the issue as to which individuals, if any, could vote the shares in the Richard Chrysler Trust, the Barbara Chrysler Trust, and the stock held by Gilbert Trailer. No one filed objections to the magistrate's ruling. Accordingly, on November 21, 2006, the trial court adopted the magistrate's decision as its own.

{¶ 9} On December 15, 2006, Hosta, Baker, and Brooks ("plaintiffs") brought this action against Jack Chrysler, both individually and as trustee of the Richard

Chrysler Trust, and Richard Chrysler, seeking a declaratory judgment that Hosta owned the 30 shares of common stock in Kil–Kare represented by Share Certificate No. 90. They also sought an injunction requiring that the votes corresponding to these shares be counted when cast by Hosta at the next Kil–Kare shareholders' meeting. Baker and Brooks were subsequently dismissed from the action, and Kil–Kare was permitted to intervene as a defendant. Kil–Kare claimed that Hosta's claims were barred, and it counterclaimed for a declaratory judgment as to the ownership of the 30 shares.

{¶ 10} On August 1, 2007, a bench trial was held on the ownership of the 30 shares of Kil–Kare stock. Hosta and Baker testified on Hosta's behalf. Donald Anspaugh, an attorney for Kil–Kare, testified for the company. In support of her claim, Hosta testified about various records, mostly supplied to her by Kil–Kare, many of which included handwritten notations by Richard Chrysler about the ownership of shares.

{¶ 11} After reviewing the evidence, the court held that Hosta was the rightful owner of the 30 shares and rendered judgment accordingly. In reaching that conclusion, the trial court found that Hosta had received the 30 shares of stock as a gift from her father in April 1984. Although Hosta had signed the back of the stock certificate, the court held that the signature did not constitute an "indorsement" as defined by R.C. 1308.01(A)(11). Rather, the court found that Hosta "did not sign for a purpose of transferring the stock and that Richard Chrysler consistently treated Plaintiff as a shareholder after she signed the back of the stock certificate." The trial court rejected Kil–Kare's argument that Richard Chrysler did not own the shares prior to giving them to Hosta. The court further concluded that the doctrines of laches, estoppel, and ratification barred defendants' claims that the 30 shares should have been offered to the board of directors of Kil–Kare prior to Richard Chrysler's purchase of the shares.

{¶ 12} Defendants appeal, raising four assignments of error.

II

{¶ 13} Defendants' first assignment of error states:

{¶ 14} "The trial court erred in admitting documents without the proper foundation having been laid."

{¶ 15} In their first assignment of error, defendants claim that the trial court erred in admitting Hosta's exhibits at trial, because the documents were not properly authenticated.

{¶ 16} Hosta's trial exhibits included Kil–Kare's articles of incorporation, Stock Certificate Nos. 9 and 90, purported shareholders lists, minutes from board of directors meetings, and IRS 1099 forms from Kil–Kare. The trial court admitted -

all of Hosta's offered exhibits: numbers 1 through 16, 19 through 28, and 34 through 39. Defendants' four exhibits, which included Hosta's exhibit 31, were also admitted.

{¶ 17} Defendants challenge the admission of all of Hosta's exhibits, except numbers 34 through 38. They claim that the disputed exhibits constituted business records of Kil–Kare and that Hosta had failed to call a representative of Kil–Kare to authenticate them. They argue: "The rules of evidence are clear that documents can only be authenticated via the testimony of someone familiar with their contents and provenance."

{¶ 18} Evid.R. 901(A) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) sets forth several examples of authentication or identification that conform to the rule. Evid.R. 901(B) specifically states that its examples are "[b]y way of illustration only, and not by way of limitation."

{¶ 19} "Circumstantial evidence, as well as direct, may be used to show authenticity. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and 'does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be.'" (Citation omitted.) *State v. Young* (Mar. 29, 2002), Montgomery App. No. 18874, 2002 WL 471846, ¶ 15, quoting *State v. Easter* (1991), 75 Ohio App.3d 22, 25, 598 N.E.2d 845.

{¶ 20} The decision whether to admit evidence is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 129–130. An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude by the court. Id.

{¶ 21} As an initial matter, we reiterate that defendants have not challenged the admission of exhibits 34 through 38. Although defendants have appealed the admission of all others, Hosta's exhibit 31 was admitted at defendants' request, not Hosta's.

{¶ 22} Hosta identified several exhibits based on her personal receipt of the documents or her personal knowledge about the documents' content. Exhibit 2 (Stock Certificate No. 90) was identified as a copy of the certificate presented to her by her father, and exhibit 3 (IRS 1099 forms from Kil–Kare) as documents from her personal tax records. Hosta stated that she received exhibit 8 at the June 11, 2002 board of directors' meeting and that she received exhibit 14 prior to a May 2004 board of directors' meeting. Hosta indicated that she had prepared

exhibit 9, which was the minutes from the August 9, 2005 board of directors' meeting. Hosta also testified, based on her knowledge as a director of Kil–Kare, that exhibit 6 was an accurate list of shareholders in 1998 and that exhibit 1 was Kil–Kare's articles of incorporation and bylaws. Each of these documents was properly authenticated under Evid.R. 901(B)(1).

{¶ 23} Donald Anspaugh authenticated exhibit 39—an e-mail from his law partner to Bill Chrysler, in which he was copied—when he stated that he had "some recollection" of seeing it and that he "had to conclude" that the printout was a copy of the e-mail he had received. See Evid.R. 901(B)(1).

{¶ 24} In support of her claim that she did not sign Stock Certificate No. 90 for the purposes of transferring its ownership, Hosta relied upon numerous handwritten notes contained on documents that had been provided to her by Kil–Kare. See exhibits 4, 6, 15–16, 19–28. Hosta properly authenticated the writings on these documents by identifying her family members' handwriting, mostly Richard Chrysler's. Evid.R. 901(B)(2).

{¶ 25} Finally, Hosta and Baker authenticated numerous documents by presenting testimony that Jack Chrysler had been presented with these exhibits during the *Hosta* trial and that Jack Chrysler had identified the documents. Baker testified that Jack Chrysler previously testified at the *Hosta* trial that exhibits 4, 5, 7, 10, 11, 12, and 13 were corporate records of Kil–Kare, and that Jack Chrysler authenticated all lists of shareholders. Hosta also testified that Jack Chrysler had identified exhibits 7 and 13 at the earlier trial. Although defendants assert that Hosta was required by Evid.R. 901(B)(1) to call a representative of Kil–Kare to testify about the authenticity of Kil–Kare records, Evid.R. 901 does not preclude the use of an admission by a party opponent that the exhibits are what the proponent claims. We conclude that these exhibits were properly authenticated.

{¶ 26} Even if the trial court had erred in admitting Hosta's exhibits, we would find their admission harmless. Even without the documents themselves, Hosta's and Baker's uncontroverted testimony established that she had engaged in shareholder activities—serving on the board of directors, attending shareholders' meetings, and receiving dividends—after the purported transfer. Moreover, Roy Baker testified that Richard Chrysler had introduced Hosta as a new shareholder after the purported indorsement. Accordingly, we find no support for defendants' assertion that "omitting reference to the documents in question, it is easy to conclude that there is little or no other evidence to support the claims of Plaintiffs/Appellees as to the question of ownership of the stock."

{¶ 27} The first assignment of error is overruled.

### III

{¶ 28} Defendants' second assignment of error states:

{¶ 29} "The trial court erred by holding that plaintiffs/appellees' case was not barred by operation of the doctrine of laches."

{¶ 30} In their second assignment of error, defendants argue that the trial court should have barred Hosta's claim to the 30 shares by invoking the doctrine of laches. They assert that since 1984, Hosta "in no way availed herself of the privileges of stock ownership" and she did not "assert any of ownership of the shares in question." Defendants thus claim that Hosta's claims are barred by the doctrine of laches, because she waited 21 years to assert her claim of ownership to the shares. We disagree.

{¶ 31} "The affirmative defense of laches 'is an equitable doctrine barring an action because of an unexcused delay that prejudices an adversary. The elements of laches are (1) an unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury involved, and (4) prejudice to the other party. The prejudice must be material, and it may not be inferred from a mere lapse of time.' " (Citation omitted.) *Dayspring of Miami Valley v. Carmean,* Clark App. No. 2007 CA 28 and 2007-Ohio-7159, 2007 WL 4615612, ¶ 29, quoting *In re Bishop,* Montgomery App. No. 20102, 2004-Ohio-2197, 2004 WL 917693; see *Murry v. Watkins,* Stark App. Nos. 2004CA136 and 2004CA139, 2004-Ohio-7053, 2004 WL 2980357 ("The defense of laches is based on the proposition that equity will not aid those who 'slumber on their rights,' or who unreasonably delay the assertion of a right").

{¶ 32} According to Hosta's and Baker's testimony, Hosta received the 30 shares from her father in April 1984. Although Hosta signed her name to the back of the stock certificate and gave the shares to her father for safekeeping, Hosta was considered a stockholder of Kil–Kare after that time. Baker testified that Richard Chrysler introduced Hosta as a new shareholder at a monthly meeting during the summer of 1984. After Hosta acquired the shares from Richard Chrysler, she began receiving notice of the annual shareholders' meetings, and she attended those meetings. On the two occasions that dividends were declared in 1995 and 1998, Hosta received dividends from Kil–Kare. Although Hosta did not list the shares as an asset during her divorce from Martin Hosta, she testified that she gave up her claim to Martin Hosta's property in Florida in exchange for his agreement not to claim an interest in her Kil–Kare shares. Between 1994 and 2004, Hosta served on the Kil–Kare board of directors, a position that required ownership of at least one share of stock. Baker testified that Hosta's ownership of the 30 shares of stock was not questioned by Kil–Kare

until approximately six weeks after Richard Chrysler's stroke. Based on this testimony, the trial court reasonably concluded that Hosta established that she had asserted a claim of ownership to the 30 shares of Kil–Kare stock between 1984 and 2005.

{¶ 33} Because Hosta's ownership of the 30 shares was not questioned by Kil–Kare until 2005, 21 years after she was given the stock by her father, Hosta had no reason prior to 2005 to initiate an action to establish her ownership of the shares. Hosta's delay was neither unreasonable nor inexcusable, and the record demonstrates that she did not suffer any injury until her ownership status was challenged in 2005. Moreover, as recognized by the trial court, Kil–Kare's delay in questioning her ownership status has prejudiced Hosta in her ability to defend her position because Richard Chrysler can no longer testify on her behalf.

{¶ 34} Based on the record, the trial court did not err when it failed to find that Hosta's claim was barred by the doctrine of laches.

{¶ 35} The second assignment of error is overruled.

## IV

{¶ 36} Defendants' third and fourth assignments of error are related, and we will address them together. Defendants' third assignment of error states:

{¶ 37} "The trial court erred by not holding that the stock certificate at issue in this case was transferred out of the name of Betty Hosta to an unknown individual."

{¶ 38} The fourth assignment of error states:

{¶ 39} "The trial court erred by admitting evidence of Ms. Hosta's professed intent at the time of signing the certificate, in violation of the parole [sic] evidence rule."

{¶ 40} Defendants claim that Hosta's signing of Stock Certificate No. 90 and returning the certificate to Richard Chrysler established a blank indorsement of the certificate and effectuated a transfer of ownership. Defendants argue that Hosta's intent to transfer ownership can be inferred from her actions, and the parol evidence rule precludes her testimony that her signature did not constitute an indorsement.

{¶ 41} Beginning with the parol evidence rule, we agree with Hosta that the parol evidence rule does not apply and did not preclude her from testifying about her intent. In *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, the Ohio Supreme Court noted:

{¶ 42} " 'The Parol Evidence Rule was developed centuries ago to protect the integrity of written contracts.' * * * The parol evidence rule is a

rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. * * * 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' " (Citations omitted.) Id. at 440, 662 N.E.2d 1074.

{¶ 43} Hosta's testimony does not contradict the terms of the share certificate. Rather, her testimony relates to her reasons for signing the certificate and, thus, whether her signature effectuated a transfer of ownership. This testimony is not barred by the parol evidence rule. See *Wall v. Planet Ford, Inc.*, 159 Ohio App.3d 840, 2005-Ohio-1207, 825 N.E.2d 686 (testimony regarding inducement to sign agreement is not barred by parol evidence rule). Defendants' fourth assignment of error is overruled.

{¶ 44} Under R.C. 1308.01(A)(11), the term "indorsement" is defined as "a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document *for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it.*" (Emphasis added.)

{¶ 45} In concluding that Hosta had not "indorsed" the stock certificate, the trial court credited Hosta's testimony that neither she nor Richard Chrysler intended her signature to transfer the shares. The court noted that several of Hosta's exhibits corroborated her assertion that Richard Chrysler viewed the disputed shares as belonging to Hosta. Defendants did not provide any testimony about Hosta's purpose in signing the share certificate.

{¶ 46} We give substantial deference to the trial court's findings of fact, and we will not reverse those findings if they are supported by competent, credible evidence. *Miller v. Remusat*, Miami App. No. 07–CA–20, 2008-Ohio-2558, 2008 WL 2220404, ¶ 24. Although the trial court could have found that Hosta's actions in signing the stock certificate and returning the certificate to her father evidenced that she signed the certificate for the purpose of transferring the stock to Richard Chrysler, we find substantial support for the trial court's conclusion that Hosta did not sign the stock certificate for the purpose of transferring the stock. The trial court reasonably found that the 30 shares of Kil–Kare stock belonged to Hosta.

{¶ 47} The third assignment of error is overruled.

V

{¶ 48} All of the assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF, P.J., and BROGAN, J., concur.