[Cite as *Gordon v. Reid*, 2013-Ohio-3649.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

MARK H. GORDON                          :

    Plaintiff-Appellant              :            C.A. CASE NO.    25507

v.                                      :            T.C. NO.    11CV6705

JOHN REID                               :            (Civil appeal from
                                                     Common Pleas Court)

    Defendant-Appellee               :

                                        :

· · · · · · · · · ·

# O P I N I O N

Rendered on the    23rd    day of    August   , 2013.

· · · · · · · · · ·

LAURENCE A. LASKY, Atty. Reg. No. 0002959, One First National Plaza, Suite 830, 130 W. Second Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

RICHARD P. ARTHUR, Atty. Reg. No. 0033580, 1634 S. Smithville Road, Dayton, Ohio 45410
    Attorney for Defendant-Appellee

JOHN REID, 1934 E. Third Street, Dayton, Ohio 45403
    Defendant-Appellee

· · · · · · · · · ·

FROELICH, J.

{¶ 1} After a bench trial in the Montgomery County Court of Common Pleas, Mark H. Gordon was awarded $14,669.73 for principal and interest due from John Reid on two land installment contracts. The court rejected Gordon's claims for the reimbursement of forced insurance premiums and fifteen years of real estate tax payments.

{¶ 2} Gordon appeals from the trial court's judgment, claiming that the court erred in applying the defense of laches to deny his claims for the real estates taxes and insurance. For the following reasons, the portion of the trial court's judgment that denied Gordon's claim for real estate tax payments will be reversed, and the matter will be remanded to the trial court for further consideration of that claim. In all other respects, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} In 1997, Mark Gordon and John Reid entered into two separate land installment contracts whereby Reid purchased the properties located at 1605 Willamet Road in Kettering, Ohio, and 3321 Ultimate Way in Dayton, Ohio. Reid purchased the Willamet property for $45,000, with a $4,000 down payment. Reid was required to pay the $41,000 balance at eight percent interest, with a monthly payment of $391.83. The purchase price for the Ultimate property was $28,500, with no down payment and eight percent interest. Reid's monthly principal and interest payment for the Ultimate property was $272.36.

{¶ 4} Both contracts required Reid to maintain insurance on the property and to pay real estate taxes. The portion of the contracts regarding real estate taxes and assessments provided, in part:

> Buyer shall pay all real estate taxes and assessments becoming due or payable
>
> from and/or after the date of this contract. Said taxes and assessments shall

be paid by the Buyer, separate and apart from the monthly installment of principle [sic] and interest, but not in monthly installments. It will be the responsibility of the Seller to provide the Buyer with a copy of the semi-annual property tax statement, and informing the Buyer of the semi-annual property tax amount so that the Buyer can reimburse the Seller the amount of the taxes. Or if the Seller so desires, can have the semi annual tax statement sent directly to the buyer, with the buyer giving the Seller proof of payment of said taxes within 15 days after they are due and payable.

In both contracts, Gordon guaranteed that there was no mortgage encumbering the property and that he would not cause any encumbrance to be placed on the premises after the date of the contract.

{¶ 5} In September 2011, Gordon brought suit against Reid, claiming that Reid had defaulted on his payments on both properties. Gordon stated in his complaint that he had no interest in "taking the real estate back or initiating a foreclosure." Rather, he asked that "the complete unpaid balance be declared immediately due." Gordon sought a monetary judgment of $8,409.50 for the Ultimate property and $7,912.19 for the Willamet property, for a total of $16,321.69, with interest. The $7,912.19 for the Willamet property included $836 for insurance premiums that Gordon had paid due to Reid's failure to maintain insurance on that property. Gordon did not allege that he was owed any amount for real estate taxes that he had paid.

{¶ 6} On October 3, 2011, prior to the filing of an answer, Gordon filed an amended complaint incorporating the allegations in his initial complaint, but seeking a

monetary judgment of $28,000. The amended complaint did not explain the increase in the requested monetary judgment.

{¶ 7} Gordon subsequently moved for summary judgment, indicating that he had mortgages on the properties, that the mortgagees required him to insure the properties when Reid's insurance lapsed, and that he was seeking reimbursement of the forced insurance premiums and the remaining mortgage balances. Reid acknowledged that he was behind on his principal and interest payments, but he disputed the amount owed. Reid denied that he owed Gordon for any additional expenses. The trial court denied Gordon's motion for summary judgment.

{¶ 8} A bench trial on Gordon's claims was held on October 4, 2012. At trial, Gordon sought the principal and interest due on both of the land installment contracts, insurance premiums that he paid due to Reid's alleged failure to insure the properties, and reimbursement of real estate taxes that he paid on the properties over the past fifteen years.

{¶ 9} Gordon and his accountant testified to the principal and interest due on both properties. Gordon's accountant provided an amortization schedule showing the amounts due on both properties. Gordon further testified that, during the last two years, Reid's insurance on both properties lapsed, and Gordon's mortgage lenders required Gordon to pay insurance premiums as part of the escrow payment for Gordon's mortgage loans. Gordon acknowledged that he had mortgages on the properties, even though the land installment contracts stated that there were no encumbrances. Gordon also testified that he had paid all of the real estate taxes on the two properties. On cross-examination, Gordon stated that he had never asked Reid for reimbursement of the real estate tax payments and he did not have

the real estate tax statements sent directly to Reid during the past 15 years. He explained that he had never "really studied" the land installment contracts and "just assumed that this was all taken care of with the monthly installments." Gordon's mortgage lenders paid the real estate taxes from Gordon's escrow accounts. Gordon's accountant testified that Gordon deducted the real estate taxes on his federal income tax forms.

{¶ 10} Reid did not dispute the amount of principal and interest that he owed. Reid also acknowledged that he did not pay real estate taxes on the Ultimate and Willamet properties, but he stated that Gordon told him that the real estate taxes were included "in his payments and not to worry about it." Reid testified that Gordon had never requested reimbursement of the real estate taxes, either orally or in writing. On cross-examination, Reid testified that he had managed a number of properties for other people in the past 20 years, that he had owned several other properties in the past, and that he knew that real estate taxes needed to be paid for those other properties. As for the insurance payments, Reid stated that the Ultimate property was always insured, and that the insurance on the Willamet property lapsed only briefly.

{¶ 11} On November 15, 2012, the trial court entered judgment in favor of Gordon in the amount of $14,669.73, representing the principal and interest due on the two properties, as stated in the amortization schedules produced at trial. The trial court denied Gordon's claims for unpaid real estate taxes and forced insurance payments, with the following explanation:

As to the real estate taxes, the agreements provided that (1) Defendant

was to pay all real estate taxes on the properties; and (2) Plaintiff was to provide Defendant with a copy of the semi-annual property tax statement for reimbursement or to have the semi-annual tax statement sent directly to Defendant for payment. Here, both parties failed to satisfy their foregoing obligations under the agreements because they mutually believed for fifteen years that the real estate taxes were included in Defendant's monthly payments. Plaintiff apparently never received separate real estate tax statements on the properties to submit to Defendant because the real estate taxes were included in Plaintiff's escrow payments to his mortgage lenders. The taxes were billed to and directly paid by the Plaintiff's mortgage lenders despite Plaintiff's initial guarantees to Defendant that the properties were not encumbered by mortgages. Consequently, Plaintiff never sought payment or reimbursement of the taxes in fifteen years, and Defendant never provided separate tax payments or reimbursement to Plaintiff. Under the unique circumstances of this case, the court finds that it would be inequitable to now require Defendant to pay fifteen years of back real estate taxes. The court finds that Plaintiff's claim for payment of the real estate taxes is barred by the doctrine of laches, as (1) fifteen years is an unreasonable delay or lapse of time in Plaintiff's assertion of his right to the real estate taxes under the agreements; (2) Plaintiff failed to provide any excuse for his fifteen year delay in seeking enforcement of his right to the real estate taxes, simply stating that he, too, believed the taxes were included in Defendant's monthly

payments; (3) Plaintiff had actual or constructive knowledge of his right to payment or reimbursement of real estate taxes as stated in the agreements; and (4) Defendant was prejudiced by Plaintiff's delay and inadvertent failure or otherwise to seek payment or reimbursement of the real estate taxes. Specifically, as to Defendant's prejudice, not only did Plaintiff assure Defendant that the taxes were included in Defendant's payments, Plaintiff himself, apparently overlooked his right to reimbursement of the taxes for fifteen years, as the taxes were never paid directly by Plaintiff but, rather, were incorporated into Plaintiff's mortgage escrow accounts pursuant to mortgages that, at the outset, were also in violation of the land installment agreements.

Finally, as to insurance, Defendant was required to maintain insurance coverage on the properties at all times during the continuance of the agreements, which Defendant admitted he failed to do, resulting in forced insurance policies by Plaintiff's mortgage lenders and the consequential additional costs to Plaintiff, totaling $3,543.00 in insurance premiums. However, the forced insurance policies again resulted from mortgage encumbrances that were, themselves, in violation of the land installment agreements, and, thus, Defendant is not liable for payment on the forced insurance policies.

{¶ 12} Gordon appeals from the trial court's judgment, raising one assignment of error. Reid did not file a responsive brief.

## II. Doctrine of Laches

{¶ 13} In his sole assignment of error, Gordon claims that the "trial court erred when it found that the doctrine of laches excused [Reid] from having to reimburse Mr. Gordon for the payment of real estate taxes and forced insurance premiums."

{¶ 14} In general, statutes of limitations "protect a party from 'stale' claims." *State ex rel. Nozik v. City of Mentor*, 11th Dist. Lake No. 2003-L-195, 2004-Ohio-5628, ¶ 8. The "purpose of a statute of limitations is to promote justice by preventing surprise through the revival of claims that parties have declined to pursue until evidence has been lost and memories have faded." *Cavin v. Smith*, 4th Dist. Lawrence No. 01CA5, 2001 WL 994117, *2 (Aug. 24, 2001).

{¶ 15} The affirmative defense of laches recognizes that a claim could be "stale" even though filed within the statute of limitations. *Thirty-Four Corp. v. Sixty-Seven Corp.*, 15 Ohio St.3d 350, 353, 474 N.E.2d 295 (1984). When a claim is brought within the statute of limitations, the doctrine of laches may still bar the claim if "special circumstances" render the delay in enforcing the claim inequitable. *Id.* "[I]n order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Id.* at 354, quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus.

{¶ 16} Stated simply, laches is an equitable doctrine that bars a party from asserting an action when there is an unexcused delay that prejudices the opposing party. *Baker v. Chrysler*, 179 Ohio App.3d 351, 2008-Ohio-6032, 901 N.E.2d 875, ¶ 31 (2d Dist.). "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2)

absence of an excuse for such a delay, (3) knowledge – actual or constructive – of the injury or wrong, and (4) prejudice to the other party." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 45, citing *State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 325, 631 N.E.2d 1048 (1994). Each element must be established for laches to apply.

{¶ 17}     Whether laches should bar an action is a fact-sensitive determination. *Atwater v. King*, 2d Dist. Greene No. 02CA45, 2003-Ohio-53, ¶ 28.   Accordingly, we review the trial court's application of the doctrine of laches for an abuse of discretion.   *Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2011 CA 36, 2012-Ohio-1437, ¶ 34.   An abuse of discretion means "that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St .2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 18}     Gordon claims that he did not unreasonably delay bringing his claims, that any delay was excused, that Reid did not suffer material prejudice, and that Reid did not have "clean hands."   We focus on whether Reid demonstrated material prejudice, as we find this element to be dispositive.

{¶ 19}     For purposes of the doctrine of laches, prejudice exists when the plaintiff's delay causes the loss of evidence helpful to the defendant's case or when the person against whom the claim is asserted has changed his position in reasonable reliance on the words or conduct of the party who would enforce the claim. *Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2011 CA 36, 2012-Ohio-1437, ¶ 36, citing *State ex rel. Donovan v. Zajac*, 125 Ohio App.3d 245, 250, 708 N.E.2d 254 (11th Dist.1998); *see Atwater* at ¶ 24.   "The prejudice must be material, and it may not be inferred from a mere lapse of time."   *Id*. at ¶ 19.   The

accumulation of interest and the absence of a timely demand for payment does not constitute material prejudice where the terms of the debt are set forth in the contract. *Thirty-Four Corp.*, 15 Ohio St.3d at 353, 474 N.E.2d 295.

{¶ 20} At trial, there was substantial evidence that Gordon knew or should have known that he was paying real estate taxes on the properties since 1997 and that his own actions caused his failure to seek reimbursement of those real estate tax payments from Reid. Gordon acknowledged at trial that he never sent Reid a request for reimbursement of the real estate taxes, nor did he have the real estate tax statements sent directly to Reid. He stated that he had failed to carefully read the land installment contracts and "assumed that this was all taken care of with the monthly installments." Because of Gordon's arrangements with his mortgage lenders, the lenders paid the real estate taxes from his escrow account. Gordon deducted the real estate taxes on his federal tax forms.

{¶ 21} Nevertheless, Reid presented no evidence that he was materially prejudiced by Gordon's conduct. Reid's testimony emphasized that Gordon had failed to seek reimbursement for fifteen years and that Gordon had told him that the real estate taxes were included in his monthly payments and "not to worry about it." Reid's testimony reflects that, given the lapse of time and Gordon's assurances, he did not expect Gordon to seek reimbursement of the real estate taxes. However, the complaint did not violate the statute of limitations for this alleged contractual violation.

{¶ 22} Reid presented no argument, let alone evidence, that he lost any evidence or changed his position in any respect due to Gordon's failure to timely seek reimbursement of the real estate taxes, or that he was unable to defend against Gordon's claim due to the

passage of time. We appreciate the trial court's conclusion that "it would be inequitable to now require Defendant to pay fifteen years of back real estate taxes;" however, Gordon's delay in asserting his claim for reimbursement is not sufficient, by itself, to establish the material prejudice required for the affirmative defense of laches. In the absence of any evidence of material prejudice, the trial court abused its discretion in determining that laches barred Gordon's claim for reimbursement of real estate tax payments. Gordon's assignment of error as to real estate tax payments is sustained.

{¶ 23} Gordon's assignment of error also references the trial court's denial of his claim seeking reimbursement of "forced insurance premiums." However, Gordon's appellate brief only addressed the real estate tax payments. We further note that the trial court did not reject Gordon's claim for insurance payments based on the doctrine of laches. Rather, the trial court denied the claim because the forced insurance policies resulted from mortgage encumbrances that violated the land installment contracts. To the extent that Gordon's assignment of error challenged the trial court's denial of his claim for reimbursement of the insurance payments, the assignment of error is overruled.

*III. Conclusion*

{¶ 24} The portion of the trial court's judgment that denied Gordon's claim for real estate tax payments will be reversed, and the matter will be remanded to the trial court for further consideration of that claim. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Laurence A. Lasky
Richard P. Arthur
John Reid
Hon. Mary Katherine Huffman