[Cite as *Gordon v. Reid*, 2014-Ohio-4708.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

MARK H. GORDON

      Plaintiff-Appellee

v.

JOHN REID

      Defendant-Appellant

Appellate Case No.    26117

Trial Court Case No.   2011-CV-6705

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 24th day of October, 2014.

. . . . . . . . . . .

LAURENCE A. LASKY, Atty. Reg. No. 0002959, 130 West Second Street, Suite 830, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

RICHARD P. ARTHUR, Atty. Reg. No. 0033580, 1634 South Smithville Road, Dayton, Ohio 45410
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-appellant, John Reid, appeals from the judgment of the Montgomery County Court of Common Pleas awarding plaintiff-appellee, Mark Gordon, $29,284.77 in unpaid real estate taxes for two properties that Reid agreed to purchase from Gordon via land installment contract.   Reid contends the doctrine of laches prohibits Gordon from recovering the unpaid real estate taxes and that the trial court erred in holding otherwise.   For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2}    The present appeal relates to our prior opinion in *Gordon v. Reid*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649.   The facts and course of proceedings in *Gordon* are relevant to the instant appeal and are as follows:

In 1997, Mark Gordon and John Reid entered into two separate land installment contracts whereby Reid purchased the properties located at 1605 Willamet Road in Kettering, Ohio, and 3321 Ultimate Way in Dayton, Ohio. Reid purchased the Willamet property for $45,000, with a $4,000 down payment. Reid was required to pay the $41,000 balance at eight percent interest, with a monthly payment of $391.83.   The purchase price for the Ultimate property was $28,500, with no down payment and eight percent interest. Reid's monthly principal and interest payment for the Ultimate property was $272.36.

Both contracts required Reid to maintain insurance on the property and to

pay real estate taxes.   * * *

In September 2011, Gordon brought suit against Reid, claiming that Reid had defaulted on his payments on both properties.   Gordon stated in his complaint that he had no interest in "taking the real estate back or initiating a foreclosure."   [Complaint (Sept. 19, 2011), Montgomery County Court of Common Pleas Case No. 2011-CV-06705, Docket No. 1, p. 1, ¶ 11.]   Rather, he asked that "the complete unpaid balance be declared immediately due."   [*Id*. at ¶ 6.]   Gordon sought a monetary judgment of $8,409.50 for the Ultimate property and $7,912.19 for the Willamet property, for a total of $16,321.69, with interest. The $7,912.19 for the Willamet property included $836 for insurance premiums that Gordon had paid due to Reid's failure to maintain insurance on that property. Gordon did not allege that he was owed any amount for real estate taxes that he had paid.

On October 3, 2011, prior to the filing of an answer, Gordon filed an amended complaint incorporating the allegations in his initial complaint, but seeking a monetary judgment of $28,000.   The amended complaint did not explain the increase in the requested monetary judgment.

Gordon subsequently moved for summary judgment, indicating that he had mortgages on the properties, that the mortgagees required him to insure the properties when Reid's insurance lapsed, and that he was seeking reimbursement of the forced insurance premiums and the remaining mortgage balances.   Reid acknowledged that he was behind on his principal and interest payments, but he

disputed the amount owed. Reid denied that he owed Gordon for any additional expenses. The trial court denied Gordon's motion for summary judgment.

A bench trial on Gordon's claims was held on October 4, 2012. At trial, Gordon sought the principal and interest due on both of the land installment contracts, insurance premiums that he paid due to Reid's alleged failure to insure the properties, and reimbursement of real estate taxes that he paid on the properties over the past fifteen years.

Gordon and his accountant testified to the principal and interest due on both properties. Gordon's accountant provided an amortization schedule showing the amounts due on both properties. * * * Gordon also testified that he had paid all of the real estate taxes on the two properties. On cross-examination, Gordon stated that he had never asked Reid for reimbursement of the real estate tax payments and he did not have the real estate tax statements sent directly to Reid during the past 15 years. He explained that he had never "really studied" the land installment contracts and "just assumed that this was all taken care of with the monthly installments." [Trial Trans. (Oct. 4, 2012), p. 43.] Gordon's mortgage lenders paid the real estate taxes from Gordon's escrow accounts. Gordon's accountant testified that Gordon deducted the real estate taxes on his federal income tax forms.

Reid did not dispute the amount of principal and interest that he owed. Reid also acknowledged that he did not pay real estate taxes on the Ultimate and Willamet properties, but he stated that Gordon told him that the real estate taxes

were included "in his payments and not to worry about it." [Trial Trans. (Oct. 4, 2012), p. 23.] Reid testified that Gordon had never requested reimbursement of the real estate taxes, either orally or in writing. On cross-examination, Reid testified that he had managed a number of properties for other people in the past 20 years, that he had owned several other properties in the past, and that he knew that real estate taxes needed to be paid for those other properties. As for the insurance payments, Reid stated that the Ultimate property was always insured, and that the insurance on the Willamet property lapsed only briefly.

On November 15, 2012, the trial court entered judgment in favor of Gordon in the amount of $14,669.73, representing the principal and interest due on the two properties, as stated in the amortization schedules produced at trial. The trial court denied Gordon's claims for unpaid real estate taxes and forced insurance payments * * *.

*Gordon*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649 at ¶ 3-11.

{¶ 3} In its written decision, the trial court explained that it denied Gordon's claim for unpaid real estate taxes because the doctrine of laches barred the claim. The trial court stated that:

Under the unique circumstances of this case, the court finds that it would be inequitable to now require [Reid] to pay fifteen years of back real estate taxes. The court finds that [Gordon's] claim for payment of the real estate taxes is barred by the doctrine of laches, as (1) fifteen years is an unreasonable delay or lapse of time in [Gordon's] assertion of his right to the real estate taxes under the

agreements; (2) [Gordon] failed to provide any excuse for his fifteen year delay in seeking enforcement of his right to the real estate taxes, simply stating that he, too, believed the taxes were included in [Reid's] monthly payments; (3) [Gordon] had actual or constructive knowledge of his right to payment or reimbursement of real estate taxes as stated in the agreements; and (4) [Reid] was prejudiced by [Gordon's] delay and inadvertent failure or otherwise to seek payment or reimbursement of the real estate taxes.

Decision, Order and Entry (Nov. 15, 2012), Montgomery County Court of Common Pleas Case No. 2011-CV-06705, Docket No. 44, p. 17.

**{¶ 4}** On November 30, 2012, Gordon appealed from the trial court's decision, claiming laches did not excuse Reid from having to reimburse him for the unpaid real estate taxes. On appeal, we concluded that the trial court abused its discretion in determining that laches barred Gordon's claim. *Gordon*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649 at ¶ 22. We came to this conclusion after finding there was no evidence in the record to establish that Reid was materially prejudiced by Gordon's failure to timely seek reimbursement of the real estate taxes. *Id.* Specifically, we held that:

Reid presented no argument, let alone evidence, that he lost any evidence or changed his position in any respect due to Gordon's failure to timely seek reimbursement of the real estate taxes, or that he was unable to defend against Gordon's claim due to the passage of time. We appreciate the trial court's conclusion that "it would be inequitable to now require [Reid] to pay fifteen years of back real estate taxes;" however, Gordon's delay in asserting his claim for

reimbursement is not sufficient, by itself, to establish the material prejudice required for the affirmative defense of laches. In the absence of any evidence of material prejudice, the trial court abused its discretion in determining that laches barred Gordon's claim for reimbursement of real estate tax payments. Gordon's assignment of error as to real estate tax payments is sustained.

*Id*.

{¶ 5} In light of this holding, we reversed the portion of the trial court's judgment denying Gordon's claim for real estate tax payments and remanded the matter to the trial court so it could further consider the claim. *Id*. at ¶ 24. In all other respects, the trial court's judgment was affirmed. *Id*.

{¶ 6} On remand, the trial court held a supplemental hearing on January 23, 2014, for purposes of allowing the parties to present additional evidence on the real estate tax issue. At the hearing, Gordon presented testimony from his accountant and tax preparer, Sharon Minter. Minter testified that the real estate taxes owed by Reid through December 2013 is $15,012.10 for the Willamet Road property and $14,272.67 for the Ultimate Way property, for a total of $29,284.77. Minter also testified that Gordon wrote the real estate taxes off as a tax credit.

{¶ 7} In addition to Minter's testimony, Todd Williams, a certified public accountant, testified on Reid's behalf at the supplemental hearing. Williams testified that since Gordon previously deducted the real estate taxes, Reid cannot do the same if he is ordered by the court to pay them. However, Williams also testified that Reid could deduct the real estate taxes for the past three years if Gordon were to amend his tax returns to not claim the real estate tax deduction. On cross-examination, Williams testified that he is not Reid's tax professional, has never

reviewed any of Reid's tax returns, and was unaware as to whether Reid had filed income tax returns over the past several years. No evidence was presented on whether Reid actually filed income tax returns or whether he would benefit from the deduction at issue.

{¶ 8} After the supplemental hearing, on February 6, 2014, the trial court issued a written decision finding that Reid failed to present sufficient evidence supporting his laches defense. While the court found the first three elements of laches were satisfied, it held that Reid failed to establish the fourth element–that he was prejudiced by Gordon's delayed claim for real estate taxes. Accordingly, the trial court issued a judgment in favor of Gordon and ordered Reid to pay the $29,284.77 in real estate taxes. Reid now appeals from that judgment, raising one assignment of error for review.

**Assignment of Error**

{¶ 9} Reid's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN FAILING TO FIND MATERIAL PREJUDICE

WAS AGAINST THE MANIFEST WEIGHT OF THE OBJECTION [sic.].

{¶ 10} Under his single assignment of error, we presume Reid is contending that the trial court's decision finding that he failed to establish prejudice in support of his laches defense was against the manifest weight of the evidence.

{¶ 11} While Reid has framed his argument as a manifest weight challenge, we note that we previously reviewed the trial court's application of the doctrine of laches for an abuse of discretion. *Gordon*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649 at ¶ 17, citing *Reid v. Wallaby's Inc.*, 2d Dist. Greene No. 2011-CA-36, 2012-Ohio-1437, ¶ 34. Regardless, Reid's

argument fails under either standard of review.

{¶ 12} Abuse of discretion is a term used to indicate that a trial court's decision is " 'unreasonable, arbitrary or unconscionable.' " *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), quoting *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). On the other hand, under a manifest weight analysis, we "review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 13} "[L]aches is an equitable doctrine that bars a party from asserting an action when there is an unexcused delay that prejudices the opposing party." *Gordon* at ¶ 16, citing *Baker v. Chrysler*, 179 Ohio App.3d 351, 2008-Ohio-6032, 901 N.E.2d 875, ¶ 31 (2d Dist.). In other words, "[w]hen a claim is brought within the statute of limitations, the doctrine of laches may still bar the claim if 'special circumstances' render the delay in enforcing the claim inequitable." *Id*. at ¶ 15, citing *Thirty-Four Corp. v. Sixty-Seven Corp.*, 15 Ohio St.3d 350, 353, 474 N.E.2d 295 (1984).

{¶ 14} "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such a delay, (3) knowledge–actual or constructive–of the injury or wrong, and (4) prejudice to the other party." *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 45, citing

*State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 325, 631 N.E.2d 1048 (1994). "Each element must be established for laches to apply." *Gordon*, 2d Dist. Montgomery No. 25507, 2013-Ohio-3649 at ¶ 16.

{¶ 15} " '[I]n order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' " *Thirty-Four Corp.* at 354, quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus. Prejudice "may not be inferred from a mere lapse of time." (Citations omitted.) *Atwater v. King*, 2d Dist. Greene No. 02CA45, 2003-Ohio-53, ¶ 19. "The accumulation of interest and the absence of a timely demand for payment does not constitute material prejudice where the terms of the debt are set forth in the contract." *Gordon* at ¶ 19, citing *Thirty-Four Corp.* at 353.

{¶ 16} In this case, Reid attempted to establish material prejudice at the supplemental hearing through the testimony of certified personal accountant, Todd Williams. Specifically, Reid points to Williams's testimony that if Reid were ordered by the court to pay the real estate taxes, he would be unable to deduct them from his taxes because Gordon had already written them off. Reid implies in his appellate brief that if he would have known about Gordon's claim earlier, he would have had the opportunity to deduct the real estate taxes and reap the benefit of a lower tax rate. He claims that he is now prevented from doing so, because Gordon unknowingly paid the real estate taxes for the past 15 years and deducted them. Reid, however, failed to present any evidence establishing that he filed income tax returns at any time during the past 15 years or that he would have benefitted from the deduction in question. Accordingly, Reid failed to sufficiently establish that he was materially prejudiced by Gordon's delay.

**{¶ 17}** Based on the foregoing, we do not find that the trial court abused its discretion in finding that the prejudice element of laches was not satisfied. Nor do we find that the trial court's decision was against the manifest weight of the evidence.

**{¶ 18}** Reid's sole assignment of error is overruled.

## Conclusion

**{¶ 19}** Having overruled Reid's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and HALL, JJ., concur.

Copies mailed to:

Laurence A. Lasky
Richard P. Arthur
Hon. Mary Katherine Huffman